This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Sharon Malinowski, aka Sharon Waddell ("Sharon"), appeals from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her two children, A.D. and M.D., and placed them in the permanent custody of Lorain County Children Services ("LCCS"). Because LCCS failed to establish, by clear and convincing evidence, that permanent custody was in the best interests of these children, we reverse and remand.
{¶ 2} Sharon is the natural mother of two children, A.D., a twelve-year-old girl, and M.D., a fourteen-year-old boy. Sharon and the children's father, Larry Dotson, divorced several years ago. Dotson has had little recent involvement with the children and he is not a party to this appeal.
{¶ 3} LCCS first became involved with this family in May 2000 due to reports of domestic violence in the home and of alcohol abuse by Sharon and her then-husband Earl Waddell ("Earl").[1] The case was initially referred for ongoing protective services, with LCCS working with Sharon to maintain her children in a safe environment. On July 19, 2000, however, an incident of domestic violence in the home caused LCCS to move for temporary custody of both children. During a physical altercation between Sharon and Earl, A.D. apparently attempted to flee the house and Earl slammed her head in the door, causing injury to A.D. On August 31, 2000, both children were adjudicated dependent and neglected and were placed in the temporary custody of LCCS.
{¶ 4} Although the children remained in the temporary custody of the agency, it appears that, at least during their first year in temporary custody, the length and frequency of visits with Sharon increased over time. At one point, LCCS sent the children home for an extended visit. During that visit, however, an "incident" occurred that caused LCCS to remove the children from the home. The record fails to fully reveal what transpired during this incident. Apparently, an argument had ensued between Sharon and A.D. because A.D. did not come home when she was supposed to and Sharon slapped A.D. across the face. Although the police were at the home, because Sharon had called them after A.D. did not come home, they did not remove the children from the home at that time. LCCS apparently removed the children at a later time.
{¶ 5} On January 11, 2002, LCCS moved for permanent custody of both children. Following a hearing at which LCCS presented one witness, an LCCS casework supervisor, the trial court granted the motion and placed both children in the permanent custody of LCCS. Sharon appeals and raises one assignment of error.
 ASSIGNMENT OF ERROR {¶ 6} "The trial court's award of permanent custody of [M.D. and A.D.] to Lorain County Children's Services because there was clear and convincing evidence that the children could not be placed with their parent within a reasonable time and that an award of permanent custody was in the best interest of the children is not supported by clear and convincing evidence and was contrary to law."
{¶ 7} Termination of parental rights is an alternative of last resort, but is sanctioned when necessary for the welfare of a child. Inre Wise (1994), 96 Ohio App.3d 619, 624. Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, who is not abandoned, orphaned, nor has been in the temporary custody of the agency for at least twelve months of the prior twenty-two months period, it must find by clear and convincing evidence that (1) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see also, In re William S. (1996), 75 Ohio St.3d 95, 99. Sharon argues that the trial court did not have clear and convincing evidence before it on either of the two prongs of the test.
{¶ 8} Although Sharon challenges the evidence that LCCS presented on each prong of the permanent custody test, because its evidence on the best interest prong was particularly weak, we will focus our discussion there.
{¶ 9} Initially, we must emphasize that a parent has a "fundamental right to care for and have custody of his or her child." Inre Willis, 3rd Dist. No. 1-02-17, 2002-Ohio-4942, ¶ 9, citingSantosky v. Kramer (1982), 455 U.S. 745, 753, 71 L.Ed.2d 599. The termination of parental rights has been described as "`the family law equivalent of the death penalty in a criminal case.'" In re Hoffman,97 Ohio St.3d 92, 2002-Ohio-5368, ¶ 14, quoting In re Smith (1991),77 Ohio App.3d 1, 16. Due to the substantial nature of the right, parents must be afforded "every procedural and substantive protection the law allows." In re Hayes (1997), 79 Ohio St.3d 46, 48.
{¶ 10} "Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence."Santosky, at 747-748. Consequently, R.C. 2151.414 embodies that principle by requiring that the agency prove each prong of the permanent custody test by clear and convincing evidence. Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." In re Adoptionof Holcomb (1985), 18 Ohio St.3d 361, 368, quoting Cross v. Ledford
(1954), 161 Ohio St. 469, paragraph three of the syllabus.
{¶ 11} To satisfy the best interest prong of the permanent custody test, LCCS was required to establish, by clear and convincing evidence, that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C.2151.414(B)(1) and 2151.414(B)(2). When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must:
 {¶ 12} "[C]onsider all relevant factors, including, but not limited to, the following:
 {¶ 13} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 14} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 15} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
 {¶ 16} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" R.C. 2151.414(D)(1)-(4)[2]. "Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors." See In re Smith, 9th Dist. No. 20711, 2002-Ohio-34; see, also, In re Palladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, ¶ 24.
{¶ 17} In this case, a review of the record reveals that, although the trial court indicated in its order that it considered all of the best interest factors, LCCS presented so little evidence on these factors that it would have been impossible for the court to adequately consider them. The evidence presented by LCCS certainly did not rise to the level of clear and convincing.
{¶ 18} The sole witness to testify for LCCS was not the family's caseworker but the casework supervisor, who met with the family approximately twenty times during the almost two years that they were involved with LCCS. Several of those meetings were apparently court appearances. Her testimony focused almost exclusively on whether Sharon had complied with the goals of her case plan. The testimony that she gave on the best interest factors, on the other hand, was almost nonexistent.
{¶ 19} The first best interest factor involves the interaction and interrelationships of the children with their mother, each other, and other people in their lives. We have stressed in the past that this factor is "highly significant." See In re Smith. Typically in permanent custody cases, the agency presents evidence of the level of bond between the parent and the children, how the parent interacted with the children during visits, the parent's rate of attendance at scheduled visits, whether the length and frequency of visits increased over time, how the children interacted with each other during visits and/or at the foster home, and the bonding and interaction of the children with their foster parents. See, e.g., In re Bunting (May 23, 2001), 9th Dist. Nos. 01CA0010 and 01CA0011; In re Rodgers (Jan. 23, 2002), 9th Dist. No. 20663. In this case, however, LCCS presented almost no evidence of this type.
{¶ 20} The only evidence about how Sharon interacted with her children was the casework supervisor's testimony that "[A.D.] has become upset during visitation, and I don't think that the mother has known how to deal with that, with her angry and hurt feelings. That the aggression between the children is not always handled appropriately by their mother." The only testimony that she gave on Sharon's visitation schedule and rate of attendance was that, during the months preceding the hearing, Sharon had weekly visits and she missed some of those visits.
{¶ 21} The witness gave almost no testimony about visitation during the more than one-year period prior to that time, when LCCS and Sharon were still working toward reunification. The casework supervisor made a brief reference to the children's extended visit with their mother from August 23 to October 9, 2001, but she gave no explanation of how or why visitation had progressed to that point. She also failed to adequately explain why the extended visit was cut short. This court cannot recall another permanent custody case where this type of evidence was so lacking.
{¶ 22} There was likewise an absence of evidence of the interaction and interrelationship between the two siblings who, prior to the involvement of LCCS, had lived together for ten years. Particularly because the evidence suggested that A.D. and M.D. will not be placed together on any permanent basis, the strength of bond and the relationship between these siblings certainly should have entered into the best interest equation.
{¶ 23} We have so little evidence on this issue that it is impossible to determine what type of interaction and interrelationship existed between Sharon and her children, between the children themselves, or between the children and their foster parents. The court had before it no evidence of how functional or dysfunctional this family relationship was.
{¶ 24} The children expressed their wishes to the court through in camera interviews. A.D. indicated that she was happy at the foster home. M.D., on the other hand, told the judge that he wanted to return to live with his mother.
{¶ 25} As to the custodial history of the family, the evidence was also weak. The record does demonstrate that the children were in the temporary custody of LCCS for more than twelve of the twenty-two months prior to the hearing. As this court stressed in In re Smith, however, "the time period in and of itself cannot be held against the parent without considering the reasons for it and the implications that it had on [these children]." The record does reveal, in very little detail, that Sharon was apparently progressing on her case plan and things were going so well that LCCS sent the children home for an extended visit. After a month and a half, apparently due to an altercation between Sharon and A.D., LCCS removed the children from the home and the goals of the agency apparently shifted away from reunification. There is so little evidence about what transpired during the nearly two years that this family was involved with LCCS, however, that this Court is reluctant to make any comment upon it except to stress that this evidence falls far short of clear and convincing.
{¶ 26} The custodial history in this case also includes a lengthy period prior to LCCS involvement. This was not a case where the children had spent most of their lives in the custody of the agency. See, e.g., Inre Jefferson (Oct. 25, 2000), 9th Dist. Nos. 20092 and 20110. These children had spent more than ten years of their lives in the custody of Sharon. The trial court had before it almost no evidence about that history. There is a suggestion of prior agency involvement in Cuyahoga County, but absolutely no evidence was presented about that history. This significant period of time should have been taken into consideration, but the trial court had almost no information before it to enable it to do so.
{¶ 27} The final best interest factor is the children's need for a legally secure placement and whether such a placement can be achieved without a grant of permanent custody to the agency. The only evidence presented on this factor was the testimony of the LCCS casework supervisor, without any explanation, that both children are in need of a legally secure placement and that such a placement cannot be achieved without granting the agency permanent custody.
{¶ 28} As detailed above, because there were so many holes in the evidence on the mandatory factors, LCCS did not present clear and convincing evidence that permanent custody was in the best interests of A.D. or M.D. The assignment of error is sustained.
{¶ 29} Judgment reversed and cause remanded.
BAIRD, P.J., CARR, J. CONCUR.
[1] It is not clear from the record whether Sharon is still married to Earl. At the time of the hearing, she had filed for divorce. Although Sharon sent a letter to this court, in which she indicates that she is now divorced from Earl, we cannot consider that information because it is not part of the trial court record. See App.R. 12(A)(1)(b); McKay v.Cutlip (1992), 80 Ohio App.3d 487, 490, fn. 3.
[2] The factor set forth in R.C. 2151.414(D)(5) is not relevant in this case.