Dora MAZUR, Appellant,

v.

Arnold L. LAZARUS, Appellee.

No. 3359.

District of Columbia Court of Appeals.

Argued Nov. 27, 1963.

Decided Jan. 8, 1964.

Ford E. Young, Jr., Washington, D. C., for appellant.

Denver H. Graham, Washington, D. C., with whom Albert E. Brault, Washington, D.C., was on the brief, for appellee.

Before HOOD, Chief Judge, QUINN, Associate Judge, and CAYTON (Chief Judge, Retired).

CAYTON, Judge.

This is an appeal by the maternal grandmother from a decree awarding custody of her two grandsons, ages 15 and 9, to their father. (The boys' mother died in 1956).

On December 6, 1961, the grandmother filed a complaint seeking custody and maintenance. At the start of a hearing held September 4, 1962, it was orally stipulated that custody was to remain with the grandmother and that the claim for support was the only issue to be tried. After a lengthy hearing the judge held that the parties had put custody in issue, and awarded custody to the father.

Plaintiff then filed a motion for a new trial on the ground that the custody issue was not properly before the court, and contended that the court had not held a full hearing on custody. Acting on the motion, the judge ordered that there be a new hearing so that the issue of custody could be fully litigated. Such hearing was held December 3, 1962, at which testimony for both parties was received.

Toward the end of the hearing defendant called as a witness the Executive Director of the Jewish Social Service Agency. The trial judge asked if either side had any questions of the Director, and also said he would talk with the Director in chambers. Plaintiff's attorney said he didn't have any questions because he didn't know what the Director's testimony would be. Four months later in April, 1963, the court received a report of that agency issued through the Department of Public Welfare, Child Welfare Division, which was generally favorable to awarding custody to the father. Thereafter, as already stated, the judge announced his decision to adhere to his earlier ruling awarding custody to the father.

■ The first question is whether the trial court was bound by the oral stipulation that custody should remain in the grandmother and that only the issue of support would be litigated. In any case involving support or custody of children a judge is required to do what is best for the welfare of the child, despite any agreement of the parties. He may raise the question of custody sua sponte, as parens patriae to protect the welfare of the child. Moreover, any error in this respect—and there was none—was overcome by the holding of a lengthy additional hearing, fully participated in by plaintiff, in which custody was fully litigated.

We now consider the question dispositive of the appeal. Plaintiff alleged it was error for the trial court to consider the report submitted by the Jewish Social Service Agency through the Department of Public Welfare, Child Welfare Division. When the Director of the Agency was called the following was said:

"MR. GRAHAM. [Attorney for Father] At this point, Your Honor, I had brought this gentleman here at the Court's suggestion. I don't know whether you want to ask him some questions or whether you want me to ask the questions about what can be done.

"THE COURT. Well, I can ask the questions that I would want of Mr. Pikser in my chambers, but I just want to know whether you and Mr. Benson have any questions you want to pose at this time.

"MR. GRAHAM. No, I have none to ask in open court, no sir.

"MR. BENSON. [Attorney for Grandmother] I know of no questions, now knowing what he has to testify about. I can't very well ask something that I don't know what he is going to testify about. I haven't the remotest idea what his testimony will be about.

"THE COURT. Then, there are no questions of this witness?

"MR. GRAHAM. Well, do I understand does Your Honor want to talk with him in chambers?

"THE COURT. Yes, I will talk with Mr. Pikser in chambers. I just wanted to know if you gentlemen had any questions.

"MR. BENSON. Does Your Honor want us to be present?

'THE COURT. You will be notified if I want you."

The record does not indicate whether the trial judge had a conference with the Director, the matter discussed, or the conclusions reached if such a conference was held. But it does show that the report of the Agency was filed in the case. The judge entered an order stating in part:

"A new hearing was held on December 3, 1962, to enable Plaintiff to present her evidence. On the day following the hearing the Court by letter requested the Child Welfare Division of the District of Columbia Department of Public Welfare to make an investigation of the custody situation with respect to the parties and to render a report and recommendation. The Acting Director of Public Welfare by way of an interim reply advised on March 4, 1963, that 'because of the complexity of the total family situation, we conferred with the staff of the Jewish Social Service Agency, * * *'

"Final Reports from both the Jewish Social Service Agency and the District of Columbia Department of Public Welfare were received in mid-April, 1963.

"*The Reports taken together with the testimony of witnesses at both hearings persuade the Court to adhere to its ruling in the Opinion and Order dated October 1, 1962.*" (Emphasis supplied.)

It is evident from the above that the Agency reports were considered by the judge in arriving at his decision.

Under a recognized and established practice, the courts of this jurisdiction sometimes call to their aid experienced and disinterested trained social workers in the Department of Public Welfare, to make unbiased examinations of the qualifications of those seeking custody of children, and the circumstances of the children themselves.[1] But it has never been the practice to receive such reports after trial, with no opportunity for the parties to read them or to cross examine the persons who prepared them. There is an obvious and fundamental unfairness in receiving evidence in this manner, for it violates due process requirements. It amounts to a private investigation by the court in assembling or receiving evidence, out of the sight and hearing of the parties, who are thus deprived of the opportunity to test, explain or rebut it. Fewel v. Fewel, 23 Cal.2d 431, 144 P.2d 592; Williams v. Williams, 8 Ill.App.2d 1, 130 N.E. 2d 291; Tumbleson v. Tumbleson, 117 Ind. App. 455, 73 N.E.2d 59; In re Gupton, 238 N.C. 303, 77 S.E.2d 716; Kesseler v. Kesseler, 10 N.Y.2d 445, 180 N.E.2d 402. See also, Comment, "Use of Extra-Record Information in Custody Cases." 24 U.Chi.L.Rev. 349 (1957). A decision based in any substantial degree on evidence so received *in camera* cannot stand.

Reversed with instructions to award a new trial.

1. Boone v. Boone, 80 U.S.App.D.C. 152, 150 F.2d 153.