OPINION
{¶ 1} The instant appeal stems from a final judgment of the Geauga County Court of Common Pleas, Juvenile Division. Appellant, James Geisert, seeks the reversal of the trial court's determination to terminate his parental rights over his natural child, Shilar Salsgiver, and to grant permanent custody of the child to appellee, the Geauga County Jobs and Family Services.
 {¶ 2} Shilar Salsgiver ("Shilar") was born in July 2000. Although appellant was Shilar's natural father, he did not reside with her during the five months of her life. Instead, the child lived with her natural mother, Ruth Salsgiver ("Ruth"), in Geauga County. During this period, appellant's role with the child was limited to visiting her on a regular basis and providing some financial support to Ruth.
 {¶ 3} On December 12, 2000, appellant attended a party at Ruth's home. At the end of the evening, appellant chose to leave the party with his new girlfriend. After seeing him leave, Ruth became despondent and overdosed on certain medication. Later that night, Ruth was admitted into a Geauga County hospital.
 {¶ 4} Immediately after the foregoing incident, Ruth's landlord agreed to take care of Shilar. However, when Ruth remained in the hospital the next day, appellee took Shilar from the landlord and filed with the trial court a complaint which alleged that Shilar was a dependent and neglected child. At the same time, appellee submitted an emergency motion for temporary legal custody of the child. That motion was quickly granted by the trial court.
 {¶ 5} At the beginning of the ensuing legal action, appellant was unwilling to admit that he was Shilar's father. However, subsequent testing verified appellant's paternity, and he was made a party to the action. In February 2001, appellee amended its complaint to delete the allegation that Shilar had been neglected; thus, the action went forward on the sole allegation that she was a dependent child. Since he had not been involved in the incident which had caused Shilar's removal from Ruth's residence, appellant did not enter a plea to the complaint. Instead, appellant stated to the trial court during the plea hearing that he would not object to a finding of true on the sole charge. After Ruth had entered her plea, the trial court made a finding of true on the complaint.
 {¶ 6} Immediately following the issuance of its initial finding in the matter, the trial court adopted a case plan which appellee had recommended for the purpose of reunifying the child with both Ruth and appellant. Although the plan set forth four separate objectives for Ruth, only one objective was stated for appellant. Specifically, the case plan stated that appellant was required to complete a mental health assessment and then follow the recommendations made by a mental health counselor.
 {¶ 7} After this case plan had been effective for approximately two months, the trial court adopted an amendment to the plan under which appellant had to pay child support for Shilar. In addition, although the case plan was never expressly amended to indicate such, the trial court informed appellant that, if he ever wanted to have custody of Shilar himself, he would have to take an appropriate parenting class, allow appellee to conduct a home study of his residence, and exercise his visitation rights on a regular basis.
 {¶ 8} In trying to satisfy the primary objective of the case plan, appellant first contacted a mental health counselor in April 2001. During his first appointment with the counselor, appellant was given a written test as part of the assessment. After completing only one fourth of the questions on the test, appellant left the counselor's office and did not try to make another appointment until July 2001. By that time, this counselor could not take appellant as a patient because he had retired.
 {¶ 9} Two months later, appellant contacted a second counselor and was able to complete the assessment by October 2001. The second counselor concluded that appellant did not suffered from any mental problems which would adversely affect his ability to care for Shilar. Thus, the counselor only recommended that appellant attend an appropriate parenting class. However, appellant did not take any steps to act upon the counselor's single recommendation until January 2002.
 {¶ 10} In regard to the other court-imposed requirements for reunification, appellant did not take the necessary steps to have a home study of his residence performed until late 2001. Once the home study was finished, the results showed that appellant had failed to prepare a room for Shilar in the house. Furthermore, although appellant visited Shilar regularly when the case plan was first implemented, the consistency of the visitation decreased considerably in late 2001. Finally, even though the child support order was in effect for the majority of 2001, appellant did not make his first payment until January 2002.
 {¶ 11} In late November 2001, appellee moved the trial court for permanent custody of Shilar. Two months later, a two-day hearing was held on the matter. In this proceeding, appellee presented ten witnesses in support of its motion. In response, appellant testified in his own behalf. Ruth did not present any evidence in her defense.
 {¶ 12} On January 29, 2002, the trial court rendered a judgment in which it granted the motion for permanent custody and terminated the parental rights of both appellant and Ruth. As the basis for this decision, the trial court specifically found that Shilar could not be placed with appellant within a reasonable time because appellant had been dilatory in meeting the various requirements for obtaining custody of the child. The trial court also found that it would be in Shilar's best interests for permanent custody to be awarded to appellee.
 {¶ 13} Appellant appealed the January 2002 judgment to this court. In In Re Salsgiver, 11th Dist. No. 2002-G-2412, 2002-Ohio-3713, we reversed the foregoing judgment on the basis that the trial court had failed to adequately discuss certain factors under R.C. 2151.41.4(D) for determining the best interests of Shilar. That is, this court held that the trial court had not fully discussed: (1) the nature of Ruth's relationship with Shilar; and (2) Shilar's "wishes" on the custody issue, as expressed by the guardian ad litem in the case. In light of this holding, we remanded the action to the trial court for further proceedings.
 {¶ 14} Upon taking jurisdiction over the matter again, the trial court issued an order in which it instructed the guardian ad litem to submit a supplemental report addressing the question of Shilar's "wishes" as to the granting of permanent custody to appellee. Once the guardian ad litem had filed the supplemental report, the trial court rendered its second judgment on the motion for permanent custody. No new hearing was held before the trial court prior to the release of the second judgment.
 {¶ 15} In its second judgment, the trial court found that appellant did not have a strong bond with Shilar and that his limited attempts to comply with the case plan had been "motivated more out of loyalty to [Ruth] than from a sincere desire to parent the child." As to this point, the court further found that Shilar had developed a strong bond with her foster parents. In relation to Shilar's wishes, the trial court again found that she was too young to formulate and express her own desires on this matter. The court did not make any specific finding concerning whether the guardian ad litem had expressed a view on the matter for Shilar.
 {¶ 16} Based upon the foregoing and the findings it had made in its prior judgment, the trial court again ordered the termination of appellant's parental rights. In now appealing this second judgment, appellant has assigned the following as error:
 {¶ 17} "The trial court erred and abused its discretion in violation of appellant's right to due process and to confront witnesses by ordering and accepting a new report from the guardian ad litem.
 {¶ 18} "The trial court erred in determining that granting permanent custody to the agency was in the best interest of the child."
 {¶ 19} Under his first assignment, appellant has raised three arguments concerning the propriety of the procedure the trial court followed upon remand. First, he contends that the trial court could not accept an additional report from the guardian ad litem because the court could only consider the evidence presented during the original hearing on the motion for permanent custody. Second, he asserts that the relevant statutory law did not allow the trial court to accept a new report after the close of the hearing. Third, he argues that, even if the trial court was allowed to accept the additional report, the court had to hold a new hearing so that he could have the opportunity to cross-examine the guardian ad litem on the "wishes" issue.
 {¶ 20} In regard to appellant's first argument, this court would agree that when an action is remanded to a trial court so that an additional finding of fact can be made, the court must usually predicate its decision on the evidence which had already been submitted by the parties. The courts of this state have generally held that, in conducting further proceedings upon remand, a trial court is required to start anew at the point in the prior proceedings where the first error occurred.See, e.g., Webb v. Webb (Sept. 2, 1999), 3rd Dist. No. 9-98-66. In light of this specific precedent, it follows that if the only error in the original proceedings occurred after the close of the evidence, the parties should not be given a new opportunity to present evidence. To this extent, appellant is generally correct in stating that if a party failed to submit sufficient evidence to carry its burden of proof originally, a remand for an additional finding of fact does not open the door for the admission of new evidence.
 {¶ 21} However, in the instant proceeding, appellee did not have the burden of proving what Shilar's wishes were regarding her custody; instead, the obligation to provide a statement on that point was on the guardian ad litem. As a result, this was not a situation in which the party who had the burden of proof on a particular issue was given a second chance to establish the necessary facts. Since appellee could not control whether the guardian ad litem had addressed that point in his original report, it follows that the failure of the guardian ad litem to address a relevant factor should not stop the trial court from rendering a final decision on the merits of appellee's motion for permanent custody. Thus, this court concludes that the trial court did not abuse its discretion in ordering the guardian ad litem to submit a supplemental report.
 {¶ 22} As to appellant's second argument under this assignment, this court would begin our analysis by noting that R.C. 2151.41.4(C) expressly states that the "written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of the hearing ***." In interpreting this statutory language, the courts of this state have concluded that the failure of the guardian ad litem to submit his report to the trial court in a timely manner constitutes a dereliction of duty and is considered reversible error. See, e.g., In reBreslav (Apr. 13, 2000), 8th Dist. No. 75468.
 {¶ 23} However, after considering the requirements of R.C. 2151.41.4(C) in the context of the entire statutory scheme for the termination of parental rights, we hold that the purpose for requiring the guardian ad litem to submit his report prior to trial is to give the parties an opportunity to rebut any assertion contained in the report. As a result, it follows that the filing of the guardian's report after the completion of the trial would not violate the purpose of this statute if the parties are given a full opportunity to submit evidence or arguments as to the report. Thus, the controlling issue in this assignment of error is the question raised under appellant's third argument: i.e., did the trial court err in considering the supplemental report without giving him the opportunity to challenge its propriety?
 {¶ 24} As appellant correctly notes, the Supreme Court of Ohio has recently reviewed a question somewhat similar to the issue before us. InIn re Hoffman, 97 Ohio St.3d 92, 2002-Ohio-5368, the parent argued that the trial court had erred in not allowing her to cross-examine the guardian ad litem concerning his report. After referring to the fact that the reason for the submission of the guardian ad litem's report is to give a court an independent source of information, the Supreme Court concluded that the need for an independent source cannot outweigh a parent's due process right to defend herself fully against the possible termination of her rights to the child. Based upon this, the court held that both parties to a parental termination case have the right to cross-examine the guardian ad litem at trial.
 {¶ 25} In support of the foregoing holding, the Hoffman court emphasized that its decision on this matter was supported by case law in other jurisdictions:
 {¶ 26} "In Mazur v. Lazarus (App.D.C. 1964), 196 A.2d 477, the court determined that the action of the court in basing its decision, at least in part, on investigative reports without opportunity for the parties to cross-examine the persons who prepared them violated due process requirements. The court expounded, `[T]he courts of this jurisdiction sometimes call to their aid experienced and disinterested trained social workers *** to make unbias[ed] examinations of the qualifications of those seeking custody of children, and the circumstances of the children themselves. But it has never been the practice to receive such reports after trial, with no opportunity for the parties to read them or to cross-examine the persons who prepared them. There is an obvious and fundamental unfairness in receiving evidence in this manner, for it violates due process requirements. It amounts to a private investigation by the court in assembling or receiving evidence, out of the sight and hearing of the parties, who are thus deprived of the opportunity to test, explain or rebut it.' Id. at 479." Hoffman
at ¶ 20.
 {¶ 27} Although the Hoffman opinion did not address the specific issue before this court, the legal underpinnings of the Hoffman logic support the conclusion in this case that the trial court erred in considering the supplemental report of the guardian ad litem in an ex parte manner. That is, the Huffman opinion stands for the proposition that, regardless of the substance of the report of the guardian ad litem, a parent should always be given the opportunity to present new evidence in regard to the report and to cross-examine the guardian ad litem as to the substance of his factual findings and recommendations. Without such an opportunity, not only is the parent denied complete due process prior to the termination of his parental rights, but the trial court's decision is based on evidence which has not been subjected to the rigors of the adversarial process.
 {¶ 28} As to the foregoing point, appellee asserts that any error on the part of the trial court was waived because appellant never requested the opportunity to submit any new evidence in response to the supplemental report. In support of this assertion, appellee emphasizes that a period of fourteen days elapsed between the filing of the new report and the release of the second judgment, and that appellant failed to take any steps during that period to file any new motion or request an additional oral hearing on the matter.
 {¶ 29} In regard to appellee's assertion, this court would note that, as part of its analysis in Huffman, the Supreme Court expressly stated that the parent in a "termination" proceeding must be given every procedural and substantive protection under the law because the effect of the termination of parental rights is similar to the imposition of the death penalty. Id. at ¶ 14. Thus, although we would agree that appellant's actions during the first remand were somewhat lackadaisical, we still hold that the trial court was required to schedule an additional hearing so that appellant could indicate whether he wanted to present new evidence in regard to the supplemental report and cross-examine the guardian ad litem on the report's contents. Since such an opportunity was not afforded to him, we ultimately conclude that the trial court violated his rights to due process by considering the supplemental report ex parte.
 {¶ 30} Furthermore, our review of the trial transcript demonstrates that appellant never exercised his right to cross-examine the guardian ad litem on the original report. As to this point, this court would note that the Huffman court indicated in its opinion that the "cross-examination" issue had never been addressed previously by that court; thus, it is entirely possible that appellant failed to exercise this particular right simply because he did not know that the right existed. Since the instant action was still pending at the time theHuffman decision was issued in October 2002, equity dictates that appellant should also be afforded the opportunity to cross-examine the guardian ad litem about the contents of his original report before a final decision on the custody issue is made.
 {¶ 31} In light of the foregoing analysis, this court holds that appellant's first assignment of error is well taken. In order to afford appellant his complete right to due process, the trial court must hold an additional evidentiary hearing in which he has the opportunity to cross-examine the guardian ad litem on both of his reports and to present any new evidence in response to the contents of the second report. After the completion of this hearing, the trial court must issue new factual findings on the "best interests" question under R.C. 2151.41.4(D) and render a new final decision on appellee's motion for permanent custody.
 {¶ 32} Under his second assignment of error, appellant has asserted two arguments for our review. First, he contends that the trial court failed to make specific findings as to each of the four factors listed in R.C. 2151.41.4(D) for determining whether to grant permanent custody of the child to the children's services agency. Second, he argues that the trial court's "best interests" determination was against the manifest weight of the evidence.
 {¶ 33} As to his first argument, this court would note that, in reversing the trial court's first judgment in this case, we remanded the case so that the trial court could make findings concerning the factors in R.C. 2151.41.4(D)(1) and (2). Our review of the trial court's new judgment indicates that the trial court did make a proper finding under R.C. 2151.41.4(D)(1); i.e., the court did discuss the nature of the relationship between Ruth and Shilar. Moreover, in relation to appellant, the trial court expressly found that he did not have a strong bond with Shilar and that his primary motivation for seeking custody was to help Ruth, not to take care of Shilar.
 {¶ 34} In regard to R.C. 2151.41.4(D)(2), our review of the new judgment also shows that the trial court has still failed to make a finding concerning the express wishes of the child on the matter. In our prior opinion, this court specifically stated that the trial court could not satisfy R.C. 2151.41.4(D)(2) merely by indicating that the child was incapable of stating her own desires on the matter:
 {¶ 35} "Furthermore, the [trial] court, by way of discussing the second factor, the wishes of the child, stated that `[t]he child is not old enough to express a preference regarding her living arrangement.' While it is true that Shilar was too young at the time of the hearing to express her wishes, the statute provides that the child's wishes may be expressed through a guardian ad litem. Shilar's guardian ad litem did express his estimation that it would be in Shilar's best interest for appellant's parental rights to be terminated and questioned Geisert's ability to serve as the custodial parent. Failure to discuss Shilar's wishes, expressed through her guardian ad litem, was also prejudicial error. ***" In re Salsgiver, 2002-Ohio-3713, at ¶ 27.
 {¶ 36} In rendering its second judgment in this matter, the trial court made the identical mistake it committed in its first judgment. Instead of merely one sentence, the trial court in the second judgment gave a lengthy statement as to why Shilar could not state her own preference. The trial court then stated that it did not have the "luxury" of waiting until Shilar was sufficiently mature to make a final decision on the motion for permanent custody. At that point, the trial court's analysis as to R.C. 2151.41.4(D)(2) ended; i.e., the trial court never made a specific finding in the second judgment concerning any statement or opinion of the guardian ad litem about the child's best interests in this matter.
 {¶ 37} As this court indicated in our first Salsgiver opinion, we would certainly agree that Shilar was not sufficiently mature in January 2002 to express her own wishes about the "permanent custody" issue. However, the act of making a specific finding as to Shilar's capabilities was not sufficient to satisfy the trial court's duty under R.C. 2151.41.4(D)(2). If the trial court cannot make a finding concerning the child's wishes as expressed by her, it must then make a finding about her wishes as expressed by the guardian ad litem through his opinion as to her best interests.
 {¶ 38} To the foregoing extent, appellant's second assignment of error also has merit. As part of its new factual findings on the "best interests" issue under R.C. 2151.41.4(D), the trial court must make a specific finding about Shilar's wishes as expressed through the opinion of the guardian ad litem concerning the child's best interests.
 {¶ 39} In light of the foregoing analysis under both assignments of error, the issue of whether the trial court's "best interests" determination was against the manifest weight of the evidence has become moot for purposes of this appeal. That issue cannot be properly addressed until the trial court has held the additional evidentiary hearing and has rendered a new decision on appellee's motion for permanent custody.
 {¶ 40} As each of appellant's two assignments of error is well taken, the judgment of the trial court is reversed, and the action is hereby remanded to the trial court for further proceedings consistent with this opinion. Specifically, the trial court is ordered to conduct an additional evidentiary hearing concerning both reports of the guardian ad litem, make new factual findings on the "best interests" issue under R.C. 2151.41.4(D), and render a new judgment on appellee's motion for permanent custody of Shilar.
DONALD R. FORD, P.J., and CYNTHIA WESTCOTT RICE, J., concur.