STATE EX REL. MARY A. FISHER v. DAVID W. DEVINS
AND ANOTHER.

200 N. W. 2d 28.

August 4, 1972—No. 43187.

*Ruttenberg, Orren, Griswold & Cohen* and *Kenneth P. Griswold,* for appellant.
*Dolores C. Orey* and *Mary Ann Brokaw,* for respondent.

PER CURIAM.

This is an appeal from an order of the district court of Ramsey County awarding custody of Patrick M. Devins, who was then 3 years old, to Mary Devins Fisher, his natural mother.

Only those facts necessary for a determination of the issues will be stated herein. Relator, Mary Devins Fisher, is the daughter of David Devins and his first wife, Winifred Devins. Mary was married on July 11, 1967, to James A. Fisher in Watertown, South Dakota. James Fisher died of a self-administered overdose of methadone the day after his marriage. Mary, without disclosing her marriage, informed her father that she was pregnant and he sent her to stay with his then secretary, Dorothy McGarry, in Connecticut. Patrick was born in Connecticut on February 22, 1968, while Mary was living with Dorothy McGarry. Originally, Mary intended to place her son with Catholic Family Services in Hartford, Connecticut, for adoption, but after some conversation with her father, she took the child from the agency and left him in care of her father and his secretary, Dorothy McGarry. She at that time believed the two would be married, remain in the east, and raise the child as her brother. Mary's mother, Winifred Devins, apparently had a drinking problem. David Devins later obtained a Mexican divorce from

her and thereafter married Dorothy McGarry on July 26, 1969, in Aberdeen, South Dakota.

After their marriage, David and Dorothy, with Patrick in their custody, lived in several motels and hotels. In December 1969, they moved in with Dorothy's sister, Mrs. Colleen Sutliff, and her family in St. Paul. Patrick has been with Dorothy almost continuously since his birth.

This proceeding was initiated by Mary Fisher's petition for a writ of habeas corpus, which was issued on June 4, 1970. A hearing thereon was set for June 26, 1970. The writ, directed at David M. Devins and Dorothy McGarry Devins, was finally heard on August 4, 1970, before the Honorable Ronald E. Hachey, who requested welfare reports and continued the matter until September 10, 1970. Temporary custody was continued in David and Dorothy Devins pending further hearings. A subsequent hearing was had before the Honorable Otis H. Godfrey, Jr., on September 10, at which time the matter was continued to October 14, 1970, and on September 11, temporary custody was continued in David and Dorothy Devins.

On October 14, 1970, another hearing was had and a stipulation was approved subject to an investigation by the probation office and subject to the court's receiving their report. This stipulation provided, among other things, that Dorothy Devins have temporary custody and control of Patrick M. Devins, provided that Dorothy and David Devins are separated and have separate residences. It also provided that—

"* * * at the conclusion of six months from the date hereof, if there has been no change in the status of any of the parties, Relator agrees to make no contest of and to consent, subject to the Court's approval, to a permanent custody of Patrick M. Devins in Dorothy Devins. Conversely, if any change occurs in the status of the parties, petition to this Court can be made for a change in this Order."

Finally, on March 25, 1971, the court on its own motion reopened the matter and a further hearing was had, at which time the custody of the child was transferred to the natural mother, Mary Devins Fisher. The court in that order set aside the stipulation theretofore entered into between the parties. This appeal by Dorothy McGarry Devins is from that order.[1]

At the outset, it should be noted that the natural mother, Mary Fisher, does not want custody of the child in order to rear him, but has stated that she wishes to place the child in a licensed child-placing

---

[1] There was no appearance by or on behalf of David Devins at the March 25, 1971, hearing or on appeal to this court.

agency for adoption. In her affidavit she states that she revokes her consent to the stipulation and "seeks custody of her infant son Patrick for the purpose of placing his custody immediately in a licensed child placing agency and consenting to his placement for adoption by said agency."

This case presents another in a long list of cases where the unfortunate child becomes a proverbial pawn in a game for custody. It presents an extremely difficult question for the trial court as well as this court to determine. An examination of the record can hardly lead to any other conclusion than that none of the parties are free from blemish. Still, it is our duty to try to arrive at a solution that will be for the best interest and welfare of the child. We are reluctant to interfere with the decision of the trial court in a matter of this kind because the trial court has the advantage of observing the contending parties and we have not. But in the final analysis we must decide the issue involved as we collectively see it.

In Eisel v. Eisel, 261 Minn. 1, 6, 110 N. W. 2d 881, 884 (1961), we said:

"In determining the question of custody, the trial courts are vested with broad discretion, and appeal courts are reluctant to interfere with their determination. We have not had an opportunity to observe and hear the testimony of the parties and their witnesses. Nevertheless, we are obliged to scrutinize the record and determine whether the trial court was justified in arriving at the decision he reached, resolving all questions of fact in favor of the prevailing party as we must."

In many of our decisions we have held that, other things being equal, the custody of children of tender years ordinarily should be given to the mother. This rule is not absolute but must yield to the ultimate determination of what is best for the welfare of the child. The rule itself has its roots in determining what is best for the child. It has been the belief of the court that unless the mother is shown to be unfit she can give a child of tender years the love, affection, and care it needs better than anyone else. This rule finds itself expressed in such cases as Meinhardt v. Meinhardt, 261 Minn. 272, 276, 111 N. W. 2d 782, 784 (1961), in the following language:

"It is something more than sentimentalism that has led the courts to come to this conclusion. That there is no substitute for the love, companionship, and guidance of a good mother hardly needs any argument. She has the time and opportunity of providing care and comfort to children at times when normally the father is away from home. In many other ways she is the one to whom the children normally look

for guidance. It is only in those cases where the mother is unfit to have the custody of the children or is unable to adequately care for them that we have upheld the award of custody to the father or, in extreme cases, to someone else."

In Eisel v. Eisel, *supra,* the same thought is expressed in the following language (261 Minn. 5, 110 N. W. 2d 884):

"* * * If the courts have promulgated a rule of law that a mother is ordinarily the proper person to have custody of a minor child, it is because experience has conclusively demonstrated the wisdom of permitting a child to be brought up under the influence of his mother and not because the mother herself has been accorded any superior, vested right in such custody. We have held that young children should have as much of the companionship of their mother as possible, there being no satisfactory substitute for her care; that such care is indispensable; that nothing is so helpful to an infant as her love."

However, in the present case that rule, no matter how deeply entrenched in our decisions, has little appplication. The mother does not want to rear the child nor has she ever given him the love, care, and affection upon which the rule is based. The only question involved here then is what is best for the welfare of this child. He has known no home except that given him by Dorothy Devins. Dr. John C. Duffy, a child psychiatrist, testified that it might have serious, bad effects on Patrick to remove him now from the custody of Dorothy. The only substantial evidence to contradict this opinion is that of a probation officer who made an investigation at the request of the trial court. The report of the probation department was not made a part of the record, but it was apparently used by the trial court in coming to his decision. In his memorandum the trial court said:

"* * * A number of hearings, the briefs of counsel, *and an extensive report by the Ramsey County Probation Department* have given the Court a fairly complete background of the facts." (Italics supplied.)

Inasmuch as the trial court apparently relied in part on the report of the probation department, we have also examined it. Much of it is based on hearsay. Counsel for appellant was not permittted to cross-examine the probation officer to ascertain the basis for her opinion that the child should be placed in an adoptive home through the Catholic Social Service. Under our decisions it was error to deny appellant's counsel an opportunity to cross-examine the probation officer in order to ascertain the basis of her opinion that the child should be removed from the

custody of Dorothy Devins. In Thompson v. Thompson, 238 Minn. 41, 47, 55 N. W. 2d 329, 332 (1952), we said:

"We believe that the rule should be, where there has been no waiver of the right, that an order * * * to change the custody of children should be based upon a hearing in which witnesses may be cross-examined and in which a record is made which effectively may be reviewed on appeal."

In Stanford v. Stanford, 266 Minn. 250, 258, 123 N. W. 2d 187, 192 (1963), we said:

"Applying to the present proceedings these well-grounded principles, which are an integral part of due process under both our Federal and state constitutions, we have no alternative except to remand this case for further proceedings in which only relevant and competent evidence shall form the basis for determination of the question of custody here involved. With reference to the reports of the Department of Court Services, it must be understood that the witnesses whose statements comprise such reports shall be present and subject to cross-examination and that otherwise any statements therein which are founded upon hearsay shall be excluded in arriving at a determination as to the fitness of plaintiff to have custody of Donald Lee Stanford. See, Gumphrey v. Gumphrey, 262 Minn. 515, 115 N. W. (2d) 353; Oltmanns v. Oltmanns, 265 Minn. 377, 121 N. W. (2d) 779. We do not condemn the practice of using court agencies to make investigations and reports on custody questions. Where the sole issue is what will best serve the welfare of the child, such reports are an invaluable aid to the court in determining the question. Their use should be encouraged, but care should be taken to give fair notice of the contents of such reports to the parties involved so as to afford them every opportunity to test the credibility of the reporter through cross-examination or otherwise and to meet or answer every adverse fact or inference included therein."

The same is true here. The attorneys for the parties were given copies of the probation officer's report but appellant's attorney was denied the opportunity of cross-examining the probation officer in order to ascertain the basis for her opinion. The court in his memorandum, in answering this question, said:

"The confidential relationship between the Court and the investigating officer should not be destroyed by permitting that officer to be examined as to her recommendations or the reasons therefor. To permit such unlimited cross-examination in the courtroom would be to destroy the value of the report."

With this statement we cannot agree. If the report is to be used as a basis, wholly or in part, for a determination as to what is best for the welfare of the child, the one who made the report should be subject to cross-examination in order to ascertain what it is based on.

In the light of the facts in this case and the unsatisfactory condition of the record, the order of the trial court is vacated and the case remanded to the trial court for submission of such additional evidence as is available, including the right of appellant here to cross-examine the probation officer upon whose recommendation the decision in all probability rested, at least in part.

Order vacated and case remanded.

Mr. Justice MacLaughlin, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.