[This decision has been published in *Ohio Official Reports* at 97 Ohio St.3d 92.]

IN RE HOFFMAN.

[Cite as *In re Hoffman,* 2002-Ohio-5368.]

*Juvenile law—Permanent custody proceeding—Parties to the proceeding have the right to cross-examine the guardian ad litem concerning the contents of the report and the basis for the custody recommendation when the report will be a factor in the trial court's decision.*

(No. 2002-0246—Submitted June 26, 2002—Decided October 23, 2002.)

CERTIFIED by the Court of Appeals for Stark County, No. 2001CA00207, 2001-Ohio-1816.

————————————

SYLLABUS OF THE COURT

In a permanent custody proceeding in which the guardian ad litem's report will be a factor in the trial court's decision, parties to the proceeding have the right to cross-examine the guardian ad litem concerning the contents of the report and the basis for a custody recommendation.

————————————

ALICE ROBIE RESNICK, J.

{¶1} On April 18, 2000, Stark County Department of Human Services ("SCDHS") filed a complaint seeking temporary custody of appellee Brenda Hoffman's two children: Brandon Hoffman, born July 30, 1999, and Melanie Dedmon, born August 14, 1991. The complaint alleged that Brandon was an abused, dependent, and neglected child due to a skull fracture and an epidural hematoma. The complaint further alleged that Melanie was a dependent child due to the abuse of Brandon and the instability of her biological father. After an emergency hearing, the trial court ordered that the children be placed in the temporary custody of SCDHS and that appellee undergo a psychological

evaluation. The trial court also issued a "no contact" order, prohibiting appellee from having any contact with her children.

{¶2} An adjudicatory hearing was held on June 29, 2000. At that hearing, appellee stipulated to a finding of abuse regarding Brandon and a finding of dependency relative to Melanie. Brandon remained in the temporary custody of SCDHS and was placed in foster care with Allen and Martha Miller. The trial court granted legal custody of Melanie to her paternal grandparents. Thereafter, the involvement of SCDHS with Melanie was terminated.

{¶3} In February 2001, appellant, Stark County Department of Job and Family Services ("SCDJFS"), filed a motion for permanent custody of Brandon and termination of appellee's parental rights pursuant to R.C. 2151.414. Carol and Raymond Ritchey, relatives of appellee, also filed a motion for custody. On April 17, 2001, the guardian ad litem filed a written report pursuant to R.C. 2151.414(C), which detailed her investigation of all parties involved in the dispute. The report was admitted into evidence by the trial court.

{¶4} The trial court hearing on the permanent custody motion, which began on May 29, 2001, was divided into two phases. The first phase focused on termination of appellee's parental rights, while the second phase focused on the best interests of the child. Appellee, through her counsel, initially represented that she would stipulate to phase one. At that time, appellee specified that she intended to litigate the best-interest phase. Upon inquiry by the court, appellee requested a trial for both phases, and the case proceeded. SCDJFS called appellee as its sole witness in phase one; appellee called no witnesses.

{¶5} The best-interest phase was contested due to the fact that both the Ritcheys and the Millers sought placement pending an adoption. During this portion of the hearing, the guardian ad litem participated in the cross-examination of witnesses; however, the parties were not allowed to cross-examine the guardian pertaining to her report.

{¶6} On June 22, 2001, the trial court issued a decision terminating appellee's parental rights, privileges, and obligations and granting permanent custody of Brandon to SCDJFS. Further, the trial court denied the Ritcheys' motion for custody and ordered that Brandon remain with the Millers pending an adoption decree by the probate court. In reaching its decision, the trial court quoted portions of the guardian's report as follows: "The guardian states, 'The Millers have provided Brandon with a placement which is both emotionally and physically healthy. * * * While it is true that children can adapt to change, it is equally true * * * that children grieve at the loss of loved ones and that their grieving is commensurate to the attachment they have to their care takers. In this case, the grieving would be lengthy, unnecessary and contrary to Brandon's best interest.' "

{¶7} The appellate court reversed and remanded the case, concluding, "[O]nce the trial court admitted the guardian's report into evidence, the trial court was required to permit mother to cross-examine the guardian."

{¶8} Appellant moved the court of appeals to certify a conflict to this court on the issue of whether, in a permanent custody action, a party may cross-examine the guardian ad litem, notwithstanding the language of R.C. 2151.414(C), which specifies, "A written report of the guardian ad litem * * * shall be submitted to the court * * * but shall not be submitted under oath." The court of appeals granted appellant's motion, finding its judgment to be in conflict with the judgment of the Court of Appeals for Wayne County in *In re Fox* (Sept. 27, 2000), Wayne App. Nos. 00CA0039, 00CA0038, 00CA0040 and 00CA0041, 2000 WL 1420276.

{¶9} The cause is now before this court upon our determination that a conflict exists.

{¶10} The question certified for our review is "whether, in a permanent custody action, a party may cross-examine the guardian ad litem, notwithstanding the language of R.C. 2151.414(C)." For the reasons that follow, we answer the

certified question in the affirmative and therefore affirm the judgment of the court of appeals.

{¶11} R.C. 2151.414(C) states:

{¶12} "In making the determinations required by this section * * * a court shall not consider the effect the granting of permanent custody to the agency would have upon any parent of the child. A written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of the hearing * * * but shall not be submitted under oath."

{¶13} From the plain language of the statute, it is reasonable to conclude that the purpose of enacting R.C. 2151.414(C) is to give the court information, in addition to that elicited at the hearing, to assist it in making sound decisions concerning permanent custody placements. This legislative enactment, however, cannot come at the expense of a parent's opportunity to defend herself against the possibility of termination of her rights.

{¶14} In *In re Hayes* (1997), 79 Ohio St.3d. 46, 48, 679 N.E.2d 680, the court noted, "Permanent termination of parental rights has been described as 'the family law equivalent of the death penalty in a criminal case.' * * * Therefore, parents 'must be afforded every procedural and substantive protection the law allows,' " quoting *In re Smith* (1991), 77 Ohio App.3d 1, 16, 601 N.E.2d 45.

{¶15} The United States Supreme Court has recognized that in permanent custody proceedings, parents must be afforded due process before their rights can be terminated. In *Santosky v. Kramer* (1982), 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599, parents appealed from the judgment of a family court that had found their children to be neglected. Id. at 751, 102 S.Ct. 1388, 71 L.Ed.2d 599. Based on that finding, the trial court permanently terminated the parents' custody, and the appellate court affirmed. Id. at 752, 102 S.Ct. 1388, 71 L.Ed.2d 599.

{¶16} The United States Supreme Court vacated the judgment and noted, "The fundamental liberty interest of natural parents in the care, custody, and

management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures." Id. at 753-754, 102 S.Ct. 1388, 71 L.Ed.2d 599.

{¶17} In *Lassiter v. Dept. of Social Serv. of Durham Cty., North Carolina* (1981), 452 U.S. 18, 24-25, 101 S.Ct. 2153, 68 L.Ed.2d 640, the United States Supreme Court stated, "For all its consequence, 'due process' has never been, and perhaps can never be, precisely defined. * * * Rather, the phrase expresses the requirement of 'fundamental fairness,' a requirement whose meaning can be as opaque as its importance is lofty. Applying the Due Process Clause is therefore an uncertain enterprise which must discover what 'fundamental fairness' consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake."

{¶18} While the issue of cross-examination of guardians ad litem in permanent custody proceedings is one of first impression in this court, other states have concluded that due process concerns dictate that parties should be given the opportunity to cross-examine persons who prepare investigative reports for the court's consideration.

{¶19} In *Collins v. Collins* (1984), 283 S.C. 526, 324 S.E.2d 82, the wife appealed from the judgment of the court in her divorce action, which granted custody of the parties' daughter to the husband. The wife contended that the court's in camera receipt of the recommendation of the guardian ad litem, and her resulting inability to cross-examine, denied her due process. Id. at 528, 324 S.E.2d 82.

Although the error was ultimately ruled harmless, the court held, "We believe that the ends of justice are better served by permitting cross-examination of a guardian ad litem. * * * [W]e hold that where the report contains statements of fact, the litigants are entitled to cross-examine the guardian ad litem and any witnesses whose testimony formed the basis of the guardian's recommendation. The family court's failure * * * to permit proper cross-examination is reversible error * * *." Id. at 530, 324 S.E.2d 82.

{¶20} In *Mazur v. Lazarus* (App.D.C.1964), 196 A.2d 477, the court determined that the action of the court in basing its decision, at least in part, on investigative reports without opportunity for the parties to cross-examine the persons who prepared them violated due process requirements. The court expounded, "[T]he courts of this jurisdiction sometimes call to their aid experienced and disinterested trained social workers * * * to make unbias[ed] examinations of the qualifications of those seeking custody of children, and the circumstances of the children themselves. But it has never been the practice to receive such reports after trial, with no opportunity for the parties to read them or to cross-examine the persons who prepared them. There is an obvious and fundamental unfairness in receiving evidence in this manner, for it violates due process requirements. It amounts to a private investigation by the court in assembling or receiving evidence, out of the sight and hearing of the parties, who are thus deprived of the opportunity to test, explain or rebut it." Id. at 479.

{¶21} In *State ex rel. Fisher v. Devins* (1972), 294 Minn. 496, 200 N.W.2d 28, the Supreme Court of Minnesota also upheld the right to cross-examine a probation officer who had prepared a report for custody proceedings. In *Fisher*, a long-term foster mother appealed the decision of the trial court to award custody of a son to the natural mother. Id. Specifically, the foster mother contended that she should have been given the opportunity to cross-examine the probation officer who prepared a report relating to custody of the child. Id. The court agreed with the

6

foster mother, stating, "Counsel for appellant was not permitted to cross-examine the probation officer to ascertain the basis for her opinion * * * . Under our decisions it was error to deny appellant's counsel an opportunity to cross-examine the probation officer in order to ascertain the basis of her opinion that the child should be removed from the custody of [the foster mother]." Id. at 499-500, 200 N.W.2d 28. The court added, "If the report is to be used as a basis, wholly or in part, for a determination as to what is best for the welfare of the child, the one who made the report should be subject to cross-examination in order to ascertain what it is based on." Id. at 501, 200 N.W.2d 28.

**{¶22}** Likewise, in *Stanford v. Stanford* (1963), 266 Minn. 250, 258, 123 N.W.2d 187, the court said, "We do not condemn the practice of using court agencies to make investigations and reports on custody questions. Where the sole issue is what will best serve the welfare of the child, such reports are an invaluable aid to the court in determining the question. Their use should be encouraged, but care should be taken to give fair notice of the contents of such reports to the parties involved so as to afford them every opportunity to test the credibility of the reporter through cross-examination or otherwise and to meet or answer every adverse fact or inference included therein."

**{¶23}** Finally, in *In re Dolly D.* (1995), 41 Cal.App.4th 440, 48 Cal Rptr.2d 691, the child was adjudicated a dependent of the juvenile court. The trial court denied the father's request to cross-examine the social worker who had prepared the report relating to custody. The appellate court reversed the trial court's judgment, stating, "In dependency proceedings, as in other civil proceedings, parties have a due process right to cross-examine and confront witnesses." Id. at 444, 48 Cal.Rptr.2d 691.

**{¶24}** Applied to the case at bar, Brandon was adjudged an abused, dependent, and neglected child. During the best-interest phase of the permanent custody hearing, appellee requested that the guardian ad litem be called to testify

about her report. That request was denied by the court. In the alternative, appellee requested that the court allow her to cross-examine the guardian ad litem regarding the contents of her report, which request was also denied.

{¶25} Due process necessitates that appellee should have had the right to cross-examine the guardian ad litem, since the trial court relied upon the report. As such, notwithstanding R.C. 2151.414(C), we hold that in a permanent custody proceeding in which the guardian ad litem's report will be a factor in the trial court's decision, parties to the proceeding have the right to cross-examine the guardian ad litem concerning the contents of the report and the basis for a custody recommendation. Without these safeguards, there are no measures to ensure the accuracy of the information provided and the credibility of those who made statements.

{¶26} We remand this cause to the trial court for a proceeding in which the guardian ad litem may be subject to cross-examination.

Judgment affirmed.

MOYER, C.J., DOUGLAS, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

COOK, J., concurs in judgment only.

_____

Michael B. Vaccaro, for appellant.

Christopher M. VanDevere, for appellee.

_____

8