OPINION
{¶ 1} Appellant, Sabrina James nka VonHoupe, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting the motion of Franklin County Children Services ("FCCS") for permanent custody of appellant's minor son, Giovanni James. Because the trial court properly granted FCCS permanent custody of Giovanni, we affirm.
 {¶ 2} Giovanni was born April 27, 1998. According to the record, FCCS first became involved with Giovanni and appellant on September 27, 1999, when police found Giovanni unattended at home and arrested appellant for child endangerment. Appellant voluntarily placed Giovanni in the care of FCCS for a period of 30 days upon her arrest. Although Giovanni was returned to appellant on October 28, appellant again voluntarily returned Giovanni to FCCS' care on November 4, 1999, when she went to live in a homeless shelter upon being evicted from her apartment.
 {¶ 3} On December 29, 1999, FCCS filed a complaint alleging Giovanni to be a neglected and dependent child. In January 2000, the juvenile court appointed CASA (Court Appointed Special Advocates) to serve as Giovanni's guardian ad litem. In February 2000, the court adjudicated Giovanni a dependent child and awarded FCCS temporary custody of Giovanni. While in FCCS' custody, Giovanni was placed in the care of foster parents, and appellant was permitted weekly visitations with him. The court also implemented a case plan in an attempt to reunite appellant and Giovanni. Under the objectives of the case plan, appellant was required to complete (1) parenting classes, (2) a psychological evaluation, (3) a drug and alcohol assessment, and (4) random drug/urine screens. In order to facilitate and fulfill those objectives, appellant was also required to obtain and maintain fulltime employment and adequate stable housing for herself and Giovanni.
 {¶ 4} On March 1, 2001, FCCS filed a motion seeking permanent custody of Giovanni. An adjudicatory hearing on FCCS' motion began on January 10, 2002. After three witnesses testified on behalf of FCCS, the trial court recessed the hearing. Pursuant to a memorandum of agreement entered into by all parties and approved by the court, the hearing was continued for 100 days to allow appellant an additional opportunity to complete the case plan by (1) providing documentation to FCCS she had stable employment and housing, (2) undergoing a drug and alcohol assessment, (3) completing all drug/urine screens FCCS provided, and (4) attending scheduled visitations with Giovanni.
 {¶ 5} After several continuances, the hearing on FCCS' motion recommenced on October 31, 2002. On February 14, 2003, the trial court issued a decision finding clear and convincing evidence that placing Giovanni in the permanent custody of FCCS and terminating appellant's parental rights was in Giovanni's best interest. Judgment was entered accordingly. Although the parental rights of the putative father, Desean Gordon, also were terminated, they are not a subject of this appeal.
 {¶ 6} Appellant timely appealed and moved this court for a stay of the trial court's judgment. This court granted the stay on May 30, 2003. In her appeal of the judgment, appellant assigns the following errors:
Assignment of Error One
There Is Insufficient Credible Evidence To Support The Judgment Of The Trial Court.
Assignment of Error Two
The Trial Court Erred In Accepting The Guardian Ad Litem's Report After The Hearing, Thereby Denying Appellant His [sic] Procedural And Substantive Due Process Rights.
Assignment of Error Three
Appellant Was Deprived Of Due Process By The Procedures Used By The Trial Court.
 {¶ 7} Appellant's first assignment of error contends insufficient credible evidence in the record supports the trial court's determination that a permanent court commitment is in Giovanni's best interest.
 {¶ 8} In considering the trial court's decision to grant permanent custody of Giovanni to FCCS, this court must determine whether the record contains the requisite evidence to satisfy the clear and convincing standard. In re Wise (1994), 96 Ohio App.3d 619, 624. Clear and convincing evidence requires that the proof "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." In re Coffman (Sept. 7, 2000), Franklin App. No. 99AP-1376, citing Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 9} FCCS sought permanent custody of Giovanni under R.C.2151.414(B)(1)(d), which authorizes a court to award a public children services agency permanent custody of a child if the court determines by clear and convincing evidence (1) it is in the best interest of the child, and (2) the child has been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999. Appellant does not contest the second prong of the statutory test in R.C. 2151.414(B)(1)(d) has been met in this case, but she challenges the trial court's conclusion it was in Giovanni's best interest to place him in FCCS' permanent custody.
 {¶ 10} Where the second prong of the statutory test is satisfied, the court's only consideration is the best interest of the child, which is determined by considering the factors set forth in R.C. 2151.414(D) in light of the facts of the particular case. In re Thompson, Franklin App. No. 02AP-557, 2003-Ohio-580, appeal not allowed, 980 Ohio St.3d 1515,2003-Ohio-1572, citing In re Williams, Franklin App. No. 02AP-924, 2002-Ohio-7205. To the extent the trial court did so, it was unnecessary for the court to analyze whether Giovanni could or should be placed with either of his parents within a reasonable time. Id.
 {¶ 11} In determining the best interests of the child in accordance with R.C. 2151.414(D), a trial court is required to consider all relevant factors including, but not limited to, the following:
(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
 {¶ 12} The trial court examined the case plan, even though it arguably did so in determining whether Giovanni could be placed with either of his parents within a reasonable time. Nonetheless, because the trial court examined it, we do likewise as part of appellant's appeal. In reaching its decision to grant FCCS' motion for permanent custody of Giovanni, the trial court found appellant had satisfied the provisions of the case plan requiring her to complete (1) a psychological evaluation, (2) parenting classes, and (3) a drug and alcohol assessment. However, the court also found appellant failed to comply with the case plan provisions requiring her to (1) obtain and maintain fulltime employment and provide documentation of same, (2) provide documentation she had permanent, stable housing in a secure environment for Giovanni, (3) complete drug/urine screens provided by FCCS, and (4) attend scheduled visitations. While appellant concedes she did not comply with every requirement of the case plan, she asserts the unmet requirements are merely "technical" documentation and reporting requirements that do not affect her ability to parent Giovanni and are insufficient to establish FCCS' permanent custody of Giovanni is in the child's best interest.
 {¶ 13} Contrary to appellant's assertion, the requirements at issue are not irrelevant to her ability to parent Giovanni. Instead, the documentation and reporting requirements provided a means for appellant to prove her compliance with the case plan's provisions. Further, compliance with the plan gave appellant the opportunity to demonstrate her commitment and ability to meet Giovanni's needs for permanency through her achieving stable employment and adequate housing in a secure, drug-free environment. The record clearly establishes, as the trial court correctly found, appellant failed to demonstrate substantial compliance with the case plan, despite having further opportunity to do so by virtue of the January 2002 agreement.
 {¶ 14} Pursuant to the January 2002 agreement regarding the case plan requirements, appellant specifically agreed to obtain and maintain fulltime employment and to provide documentation of her employment, including pay stubs, work schedules, and names of supervisors and contact persons. Appellant testified at the October 2002 hearing she had a series of short-term jobs during the initial phase of the case plan, followed by fulltime employment as a sales associate at Kaufmann's Department Store from August 2001 to June 2002, and self-employment as a medical transcriptionist during the month before the October hearing. The record, however, demonstrates she failed to substantiate most of her employment claims with the documentation required in the January 2002 agreement.
 {¶ 15} Moreover, the trial court found appellant lacked credibility regarding employment testimony, in light of her admission at the October hearing that she had testified falsely at the January hearing to having fulltime employment with Prime America as a financial analyst or investment broker. The juvenile court, as the trier of fact, weighs the testimony and credibility of witnesses. Bechtol v. Bechtol (1990),49 Ohio St.3d 21. The findings of the trial court are presumed correct since, as the trier of fact, the trial court, in this case, is in the best position to weigh the evidence and evaluate the testimony. Thompson, supra.
 {¶ 16} Appellant's admitted misrepresentation regarding employment supports the trial court's finding that appellant lacks credibility regarding the issue of employment. The lack of credibility, coupled with her failure to provide the requisite documentation to substantiate claims of employment, clearly supports the trial court's finding that appellant failed to demonstrate she can maintain fulltime employment to support Giovanni, as required in the case plan.
 {¶ 17} Clear and convincing evidence also supports the trial court's finding that appellant failed to demonstrate she had obtained and could maintain stable and permanent housing in a safe, secure environment for Giovanni. Appellant admitted during the adjudicatory hearing that, from November 1999 until September or October 2001, she lived in a homeless shelter, with her mother, and with a friend. The record establishes that for the next six or seven months, appellant lived in an apartment in Columbus that met FCCS standards as an adequate family residence. Nevertheless, despite FCCS' approval of the apartment, appellant stated she moved out of the apartment in April 2002. She moved in with her mother in Crestline, Ohio, where she slept on the living room couch, and where she still lived at the time of the October 2002 hearing, even though she purportedly married in August 2002. At the October hearing, appellant claimed she and her husband would be leasing a house in Dublin the next day, but she did not present a signed lease to support her claim. After finding appellant's testimony on the housing issue not credible, the court found appellant failed to demonstrate she had permanent, safe housing for Giovanni as of the final day of the hearing and thus had not successfully completed this portion of the case plan. The evidence clearly supports the trial court's finding.
 {¶ 18} Next, although the record indicates appellant completed a drug and alcohol assessment as the case plan required, uncontroverted evidence demonstrates appellant did not complete a vast majority of the drug/urine screens FCCS provided and the case plan required, despite credible evidence appellant was advised incomplete urine screens would be deemed positive. The foregoing evidence, together with (1) uncontested evidence appellant had at least one positive drug screen early in the FCCS screening process, and (2) appellant's admission she had smoked marijuana from time-to-time, provides ample support for the trial court's finding that appellant failed to demonstrate she could provide a drug-free environment.
 {¶ 19} Finally, the record establishes appellant failed to substantially comply with the case plan's provision that she attend FCCS scheduled visitations with Giovanni. Uncontested evidence reveals appellant missed 10 of approximately 30 scheduled visitations with Giovanni from April 2001 to January 2002, and then missed approximately half of 36 scheduled visitations with Giovanni.
 {¶ 20} Based on the foregoing, we conclude the trial court properly found appellant failed to substantially comply with the case plan. Having thus decided, we next consider the statutory best interest factors in R.C. 2151.414(D) in light of the facts of this case.
 {¶ 21} As previously noted, R.C. 2151.414(D)(1) addresses the interaction and interrelationship of the child with his parents, relatives, and foster parents. According to the record, the putative father failed to support, visit, or communicate with Giovanni since at least December 1999, and no other relatives are willing to take Giovanni into their homes. The record shows appellant frequently missed visitations with Giovanni, despite being given the opportunity to visit regularly with him, but she often brought him clothes or toys in the visitations she attended.
 {¶ 22} The FCCS caseworker assigned to the case until November 2000 testified Giovanni cried when appellant left the first visitations, but kept more to himself and did not cry when appellant left later visitations. Based on visitations observed between April 2001 and the adjudicatory hearings, another FCCS caseworker testified to her belief that appellant loves Giovanni, but Giovanni is not bonded or attached to appellant; he views her as more of a playmate than a mother. According to the caseworker, Giovanni is bonded and attached to the foster mother he has lived with since June 2001, whom he calls "mom." CASA's volunteer guardian ad litem testified to little interaction between Giovanni and appellant during the visitations she observed, but during the CASA guardian ad litem's visits to the foster mother's home, Giovanni usually played with or sat in the foster mother's lap. The foregoing evidence provides the necessary support for the trial court's finding that Giovanni has little or no bond with appellant and has instead bonded with his foster mother. Accordingly, R.C. 2151.414(D)(1) weighs against appellant.
 {¶ 23} Pursuant to R.C. 2151.414(D)(2), we next consider the guardian ad litem's recommendation that the court grant FCCS' motion for permanent custody of Giovanni. R.C. 2151.414(D)(2) thus weighs against appellant.
 {¶ 24} The requirements of R.C. 2151.414(D)(3) were met, in that, at the time of the final hearing, Giovanni had been in the temporary custody of FCCS for 12 or more months of a consecutive 22-month period. Accordingly, this factor weighs against appellant.
 {¶ 25} Finally, we consider the evidence relevant to R.C.2151.414(D)(4), Giovanni's need for a permanent placement and whether it can be achieved without a grant of permanent custody to FCCS. At the time the court granted FCCS permanent custody of Giovanni, the child was not yet five and had been in FCCS' temporary custody for three years, during which he had lived with three foster families. FCCS caseworkers Kimberly Zelasko and Jessaka Menzie, as Giovanni's volunteer guardian ad litem, testified Giovanni is very much in need of a permanent home. Testifying she had not seen any stability in appellant's situation, Menzie opined it is not in Giovanni's best interest to be placed with appellant. Record evidence indicates Giovanni's foster parents at the time of the adjudicatory hearings, with whom he had lived since June 2001, expressed interest in providing Giovanni a permanent home through adoption, which could not be achieved without a grant of permanent custody to FCCS. We conclude R.C. 2151.414(D)(4) weighs against appellant.
 {¶ 26} In summary, competent evidence establishes appellant failed to demonstrate her substantial compliance with the case plan and thereby demonstrate she could provide a stable, secure, permanent home for Giovanni. Further, the evidence is clear and convincing that Giovanni's best interests are served by placing him in the permanent custody of FCCS, thus facilitating his adoption and thereby providing him with needed permanency in his life. Appellant's first assignment of error is overruled.
 {¶ 27} In her second assignment of error, appellant asserts the trial court erred in relying on the guardian ad litem's report as a factor in its decision to grant permanent custody of Giovanni to FCCS. In support, appellant contends (1) the guardian ad litem's report was filed after the adjudicatory hearing, rather than "prior to or at the time of the hearing" as required by R.C. 2151.414(C), and (2) Jessaka Menzie, the CASA volunteer guardian ad litem who testified and was subject to cross-examination at the adjudicatory hearing, was not the same person who submitted CASA's guardian ad litem report recommending the court grant FCCS permanent placement. Because (1) CASA's written guardian ad litem report was not admitted into evidence at the adjudicatory hearing, and (2) Marilyn Rogers, the CASA staff attorney who prepared and signed the report, did not testify at the hearing, appellant asserts her right to due process was violated by appellant's inability to conduct cross-examination concerning the report's contents and the basis for the custody recommendation.
 {¶ 28} R.C. 2151.414(C) states, in relevant part:
A written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of the [adjudicatory] hearing held pursuant to division (A) of this section or section 2151.35
of the Revised Code but shall not be submitted under oath. (Emphasis added.)
 {¶ 29} Appellant's counsel's reference to the report itself during cross-examination of Jessaka Menzie, and the trial court's comments that the report had been "passed around" at the hearing but had not yet been filed and stamped, reflects CASA's R.C. 2151.414(C) report was submitted to, but not filed with, the court prior to or at the October 31, 2002 hearing. The record shows the report was filed and time-stamped by the clerk's office that same day. Indeed, the court noted in its decision that the report was filed immediately following the hearing, well before the court rendered its decision on February 14, 2003.
 {¶ 30} The record further reflects the trial court appointed CASA in January 2000 to serve as Giovanni's guardian ad litem. CASA assigned one of its volunteers, Jessaka Menzie, to this case in September 2001. Menzie testified, and was extensively cross-examined by appellant's counsel, regarding (1) her involvement in the case, including her observations of interactions between Giovanni with appellant and with his foster mother, and (2) her recommendation that Giovanni not be placed with appellant and instead be permanently placed with FCCS. Menzie admitted she had neither written nor seen CASA's written guardian ad litem report, but stated she had routinely met at length with CASA staff attorney Marilyn Rogers regarding the case and regularly updated Rogers on her observations at visitations, conversations with the caseworkers, and her recommendations regarding placement of Giovanni.
 {¶ 31} Marilyn Rogers, legal counsel for CASA, advised the court she used Menzie's information and recommendation to prepare the written report, and signed it on CASA's behalf as its legal representative. The short, one-paragraph report "supports FCCS' request for permanent custody," but does not detail the factual basis supporting the recommendation.
 {¶ 32} "In a permanent custody proceeding in which the guardian ad litem's report will be a factor in the trial court's decision, parties to the proceeding have [a due process] right to cross-examine the guardian ad litem concerning the contents of the report and the basis for a custody recommendation." In re Hoffman, 97 Ohio St.3d 92,2002-Ohio-5368, syllabus. The court in Hoffman explained that "[w]ithout these safeguards, there are no measures to ensure the accuracy of the information provided and the credibility of those who made statements." Id. at 97.
 {¶ 33} Hoffman involved permanent custody proceedings in which the parents were not permitted to cross-examine the guardian ad litem even though the guardian ad litem's report, detailing an investigation of all parties involved in the dispute, had been admitted into evidence. Id. at 93, 97. Hoffman, however, is distinguishable from the case before us because the parties here were allowed to cross-examine Jessaka Menzie, the volunteer guardian ad litem assigned by CASA, who testified at length regarding her investigation and recommendations in the case. Her recommendation was consistent with, and the basis for, the recommendation in CASA's written report.
 {¶ 34} The Eleventh District Court of Appeals recently held that "the purpose for requiring the guardian ad litem to submit his report prior to trial is to give the parties an opportunity to rebut any assertion contained in the report." In re Salsgiver, Geauga App. No. 2002-G-2478, 2003-Ohio-1203. Continuing, the court stated it therefore "follows that the filing of the guardian's report after the completion of the trial would not violate the purpose of [R.C. 2151.414(C)] if the parties are given a full opportunity to submit evidence or arguments as to the report." Id.
 {¶ 35} Here, applying the reasoning the court advanced in Salsgiver, we conclude the purpose of R.C. 2151.414(C) was not violated in this case where (1) the written guardian ad litem report was filed shortly after the adjudicatory hearing ended, and (2) the record indicates appellant's counsel had a copy of the report during the hearing and was "given a full opportunity to submit evidence or arguments" regarding the recommendation that FCCS' request for permanent custody be granted. See, also, In re Nethers (June 5, 2000), Licking App. No. 99 CA 104 (finding no prejudice where the written report of the guardian ad litem is not filed until several hours after the adjudicatory hearing ends, but the guardian ad litem states her recommendation, and reasons in support, at the hearing). Under these circumstances, appellant has not demonstrated prejudice.
 {¶ 36} Because appellant has failed to demonstrate violation of her fundamental due process rights to examine the basis for the guardian ad litem's recommendation in this case, appellant's second assignment of error is overruled.
 {¶ 37} Finally, in her third assignment of error, appellant asserts she was denied due process because the trial court adjudicated FCCS' permanent custody motion 715 days after the motion was filed, well beyond the 200-day time limit set forth in R.C. 2151.414(A)(2), which provides, in part:
The court shall hold the hearing scheduled pursuant to division (A)(1) of this section not later than one hundred twenty days after the agency files the motion for permanent custody, except that, for good cause shown, the court may continue the hearing for a reasonable period of time beyond the one-hundred-twenty-day deadline. The court shall issue an order that grants, denies, or otherwise disposes of the motion for permanent custody, and journalize the order, not later than two hundred days after the agency files the motion.
* * *
The failure of the court to comply with the time periods set forth in division (A)(2) of this section does not affect the authority of the court to issue any order under this chapter and does not provide any basis for attacking the jurisdiction of the court or the validity of any order of the court.
 {¶ 38} The permanent custody motion was filed in this case on March 1, 2001. The adjudicatory hearing on the motion began on January 10, 2002, but was continued for 100 days by agreement of the parties and approval of the court. After several other continuances, the hearing recommenced October 31, 2002. The record reflects appellant agreed to the 100-day continuance of the initial adjudicatory hearing, and the court granted appellant several of the other continuances to accommodate appellant's changes of counsel. The court's decision in this matter was journalized February 14, 2003, 715 days after the permanent custody motion was filed.
 {¶ 39} This court has agreed with other appellate districts that a failure to meet the time periods set forth in R.C. 2151.414(A)(2) does not violate the statute or provide a basis for attacking the validity of a judgment on a motion for permanent custody. Thompson, supra. Although appellant contends the length of the delay denied her a meaningful opportunity to defend against the permanent custody motion, she has demonstrated no affirmative prejudice resulting from the delay. To the contrary, the delays not only afforded appellant's counsel opportunity to familiarize themselves with her case in order to provide appellant a meaningful defense, but also afforded appellant further opportunity to comply with the provisions of the case plan and be reunited with her son. Appellant's third assignment of error is overruled.
 {¶ 40} Having overruled all of appellant's assignments of error, we dissolve this court's stay of judgment and affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting FCCS' motion for permanent custody of Giovanni James.
Judgment affirmed.
KLATT and SADLER, JJ., concur.