DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, James G. ("Father"), appeals from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that terminated his parental rights and placed his minor child in the permanent custody of Lorain County Children Services ("LCCS"). This Court reverses and remands the termination of parental rights.
 I. {¶ 2} Father is the natural father of B.G., born September 7, 2005. B.G.'s mother ("Mother") is not a party to this appeal. On September 9, 2005, LCCS filed a dependency complaint due to the extensive criminal and drug history of Mother and the prior involvement of LCCS with Mother and two older children. Father is not the father of Mother's older children and he and Mother did not reside in the same household at the time B.G. was removed.
 {¶ 3} The case plan focused on reunifying B.G. with Mother. During September 2006, the trial court returned B.G. to his mother's custody under an order of protective supervision. *Page 2 
Protective supervision was terminated four months later, with Mother regaining full legal custody of B.G.
 {¶ 4} Approximately 13 months after B.G. returned to Mother's custody, however, Mother had apparently started abusing drugs again. She left B.G. with Father and did not return for the child. After Father contacted LCCS for help, LCCS moved for, and the trial court granted, a change of disposition that placed B.G. in the temporary custody of LCCS.
 {¶ 5} One month later, LCCS moved for permanent custody of B.G. Following a hearing on the motion, the trial court found that B.G. could not be placed with either parent within a reasonable time or should not be placed with them and that permanent custody was in his best interest. Therefore, the trial court terminated parental rights and placed B.G. in the permanent custody of LCCS. Father appeals and raises five assignments of error.
 II. ASSIGNMENT OF ERROR I "THE STATE FAILED TO MEET ITS BURDEN OF PROOF WHEN IT DID NOT PROVE BY CLEAR AND CONVINCING EVIDENCE THAT IT WAS IN B.G.'S BEST INTEREST TO REMAIN IN THE CUSTODY OF [LCCS] PURSUANT TO R.C. 2151.414(B)(1)."
 {¶ 6} Father contends that the trial court's decision to terminate his parental rights and place B.G. in the permanent custody of LCCS was not supported by the evidence presented at the permanent custody hearing. Specifically, he maintains that LCCS failed to present clear and convincing evidence on either prong of the permanent custody test.
 {¶ 7} Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child *Page 3 
cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see, also,In re William S. (1996), 75 Ohio St.3d 95, 99.
 {¶ 8} Clear and convincing evidence is that which will produce in the trier of fact "`a firm belief or conviction as to the facts sought to be established.'" In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 9} The permanent custody hearing in this case was extremely brief. In addition to addressing whether Father's and Mother's parental rights to B.G. should be terminated, the hearing also involved the permanent custody of a half-sibling of B.G. who is not at issue in this appeal, as well as the father of that child. LCCS was required to establish both prongs of the permanent custody test pertaining to both children and all three parents.
 {¶ 10} Nonetheless, the agency's evidence pertaining to the three parents and two children is reflected in a mere 25 pages of transcript. The sole witness for LCCS was the caseworker, who testified primarily about Mother and the father of the other child. Mother and the father of the other child both had long-standing drug abuse and criminal histories and both had lost custody of an older child in a prior permanent custody case. None of those facts applied to Father, however.
 {¶ 11} LCCS presented very little evidence pertaining to Father on either prong of the permanent custody test. As explained below, LCCS failed to establish the appropriateness of *Page 4 
permanent custody by even a preponderance of evidence, much less by the heightened standard of clear and convincing evidence.
 {¶ 12} The trial court found that the first prong of the test was satisfied under R.C. 2151.414(E)(1), R.C. 2151.414(E)(4), and R.C. 2151.414(E)(14), which provide as follows:
 "(1) Following the placement of the child outside the child's home * * *, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. * * *.
 "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 "(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect."
 {¶ 13} Although LCCS may have presented evidence that these factors applied to Mother and the father of the other child at issue in the hearing, it did not establish by clear and convincing evidence that any of these factors applied to Father.
 {¶ 14} The evidence pertaining to Father and his parental relationship with B.G. was as follows. The case plan required Father to establish paternity and develop an ongoing relationship with B.G. According to the caseworker, Father was not ordered to pay child support because he was on disability. The record demonstrates that Father established paternity and that he also attempted to develop a relationship with B.G. Father visited B.G. regularly and the lengths of his visits were increased over time. Although the caseworker testified that Father did not always interact with B.G. as much as the agency would like and that he sometimes left the visits early, she conceded that she had observed only four visits during the two years that this case was pending. *Page 5 
 {¶ 15} None of the evidence established that any of the above R.C. 2151.414(E) factors pertained to Father. LCCS did not prove that Father had failed to remedy the conditions that caused B.G. to be placed outside the home, nor did it prove a lack of commitment by Father or his unwillingness to provide for B.G. The agency failed to meet its burden on the first prong of the permanent custody test.
 {¶ 16} LCCS was also required to establish that permanent custody was in the best interest of B.G., based on the four factors set forth in R.C. 2151.414(D). When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider the following factors:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" R.C. 2151.414(D)(1)-(4).[1]
 {¶ 17} The brief evidence pertaining to Father's interaction with B.G. was detailed above. Father came to visits regularly and the agency had increased his visitation time during the case plan period. According to the caseworker's observations at four of the visits during a period of over two years, Father sometimes left early and was not always completely attentive to B.G. during the visits. There was no evidence about the actual relationship between Father and *Page 6 
B.G., such as how B.G. responded to Father, whether he was bonded with him, or whether their actual interaction was appropriate.
 {¶ 18} Because B.G. was only two years old, a guardian ad litem prepared a report on his behalf. The trial court indicated at the hearing that it would not consider the report of the guardian ad litem due to an objection raised by Mother's counsel that the report was not filed or served on the parents in a timely manner. On reconsideration after the hearing, however, the trial court decided to consider the report.
 {¶ 19} Although the guardian ad litem indicated that permanent custody was in the best interest of B.G., she gave little rationale for her opinion. Her one-page report indicated that she had interviewed only the foster mother, the caseworker, and the children in this case. Her report does not indicate that she ever spoke to or met Father, nor did she observe him interact with B.G. Nonetheless, the report indicates that Father "never" stayed for his full two-hour visits, a statement that is apparently nothing more than a hearsay recitation of what the caseworker told her. Given that this case spanned more than two years, the brief report of this guardian ad litem is in sharp contrast to the reports that this Court typically reviews in lengthy permanent custody cases. The permanent custody records before this Court frequently include guardian ad litem reports that are dozens of pages long, include hundreds of contacts with those interested in the case, and certainly include multiple contacts or attempted contacts with the parents of the child at issue.
 {¶ 20} The custodial history of B.G. was unclear, except that he had spent most of his life in the custody of Mother. Although there was testimony that Father had never had actual custody of B.G., the record does not explain whether Father ever lived with B.G. or how he was involved in the life of B.G., if at all, prior to this case. *Page 7 
 {¶ 21} Finally, there was little evidence presented on the final best interest factor pertaining to whether LCCS had pursued alternative permanent placements for B.G., such as placement with other relatives. The caseworker testified briefly that Father had provided her with the names of eight family members who might be able to take custody of B.G. but that none of them was able or willing to do so.
 {¶ 22} The limited evidence before the court on the best interest factors failed to establish, by clear and convincing evidence, that permanent custody was in the best interest of B.G.
 {¶ 23} This Court must once again emphasize that termination of parental rights has been referred to as the "`the family law equivalent of the death penalty in a criminal case.'" In re Hoffman,97 Ohio St.3d 92, 2002-Ohio-5368, at ¶ 14, quoting In re Smith (1991),77 Ohio App.3d 1, 16. This Court conducts a thorough review of the evidence presented in these cases, but our review is limited to the evidence in the trial court record. LCCS presented so little evidence about Father and his ability to parent B.G. that it is impossible to apply the statutory factors to this evidence and determine whether parental rights should be terminated. Because LCCS failed to meet its burden on either prong of the permanent custody test, Father's first assignment of error is sustained.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT'S DECISION TO GRANT PERMANENT CUSTODY TO [LCCS] WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 ASSIGNMENT OF ERROR III "THE TRIAL COURT IMPROPERLY RELIED ON THE REPORT OF THE GUARDIAN AD LITEM IN VIOLATION OF [FATHER'S] DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION." *Page 8 
 ASSIGNMENT OF ERROR IV "THE TRIAL COURT ERRED IN GRANTING [LCCS'S] MOTION TO BYPASS REASONABLE EFFORTS. LCCS FILED ITS MOTION ON THE GROUNDS THAT MOTHER HAD PREVIOUSLY LOST CUSTODY OF A CHILD AND HAS A CONTINUING DRUG ADDICTION. THIS MOTION SHOULD NOT HAVE BEEN GRANTED AS TO [FATHER] AS HE WAS NOT AFFECTED BY EITHER CONDITION UPON WHICH THE MOTION WAS FILED."
 ASSIGNMENT OF ERROR V "[FATHER] WAS NOT GIVEN A REASONABLE AMOUNT OF TIME IN VIOLATION OF R.C. 2151414(B)(1)(A) TO REMEDY ANY SITUATIONS WHICH MADE HIS HOME ENVIRONMENT UNSUITABLE FOR HIS CHILD."
 {¶ 24} This Court need not address the merits of Father's remaining assignments of error because they have been rendered moot by this Court's disposition of the first assignment of error. See App. R. 12(A)(1)(c).
 III. {¶ 25} The first assignment of error is sustained. The remaining assignments of error were not addressed. The judgment of the trial court terminating parental rights is reversed and the cause remanded for proceedings consistent with this opinion.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27. *Page 9 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellee.
DONNA J. CARR FOR THE COURT
SLABY, J. DICKINSON, J. CONCUR
[1] The factor set R.C. 2151.414(D)(5) is not relevant in this case. *Page 1