[Cite as *In re S.B.*, 2019-Ohio-872.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No. 107579

---

IN RE:   S.B., ET AL.
Minor Children

[Appeal By Sa.B., Mother]

---

JUDGMENT:
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD16903526, AD16903527, and AD16903529

BEFORE:    Boyle, P.J., E.A. Gallagher, J., and Headen, J.

RELEASED AND JOURNALIZED:    March 14, 2019

**ATTORNEY FOR APPELLANT**

Amichai Eitan Zukowsky
23811 Chagrin Boulevard, Suite 160
Cleveland, Ohio   44122


**FOR APPELLEES**

**Attorneys for C.C.D.C.F.S.**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:   Cheryl Rice
        Michelle A. Myers
        Assistant Prosecuting Attorneys
3955 Euclid Avenue
Cleveland, Ohio   44115
              and
Tasha Forchione
Assistant Prosecuting Attorney
1200 Ontario Street, 8th Floor
Cleveland, Ohio   44113

**For Father of C.B.**

P.L.B.
598 Taylor Place
Painesville, Ohio   44077

**For Father of S.B.**

L.D.V.
47 Pershing Avenue
Uniontown, Pennsylvania   15401

**Attorney for S.B.**

Daniel J. Bartos
20220 Center Ridge Road, Suite 160
Rocky River, Ohio   44116

**Guardian ad Litem**

Amy K. Habinski
Habinski Law Offices, L.L.C.
11459 Mayfield Avenue, Suite 342
Cleveland, Ohio   44106

MARY J. BOYLE, P.J.:

{¶1}    Appellant, Sa.B. ("Mother"), appeals from the trial court's judgment granting Cuyahoga County Department of Children and Family Services ("CCDCFS" or "the agency") permanent custody of three of her children, S.B. (d.o.b. Nov. 19, 2008), C.B. (d.o.b. Dec. 2, 2010), and J.B. (d.o.b.   Oct. 25, 2014).   Mother raises one assignment of error for our review:

> The trial court's decision to award permanent custody to CCDCFS was against the manifest weight of the evidence as it was not supported by clear and convincing evidence.

{¶2}    Finding no merit to her assignment of error, we affirm.

## I. Procedural History and Factual Background

{¶3}    On March 9, 2016, CCDCFS filed a complaint for dependency and temporary custody of S.B., C.B., and J.B. and legal custody of one of Mother's other children, A.H., to his father.[1]   The complaint alleged that on March 8, 2016, "Mother reported that she is unable and unwilling to provide care for the children and requested their removal."   The complaint further alleged that Mother was homeless and unemployed.   As to S.B., the complaint stated that the child's father fails to support or visit S.B. and his whereabouts were unknown.   As to C.B., the complaint stated that the child's father fails to support or visit C.B.   As to J.B., the complaint stated that paternity has not been established and "John Doe" has failed to support, visit, or

communicate with J.B. since his birth.[2]  CCDCFS further stated in the complaint that it removed the children on March 8, 2016 pursuant to an ex parte order, which found that "the children's residence in or return to the home of [Mother] would be contrary to the children's best interest and welfare" and that CCDCFS "made reasonable efforts to prevent placement and/or to make it possible for the children to remain in or return to the home."

{¶4} Along with its complaint, CCDCFS moved for predispositional temporary custody of S.B., C.B., and J.B.

{¶5}  On March 10, 2016, the magistrate committed the children to CCDCFS's emergency custody.[3]  The trial court also appointed a guardian ad litem ("GAL") for S.B. and C.B.[4]

{¶6}  On March 14, 2016, CCDCFS filed an amended complaint, alleging that the children were neglected and requesting temporary custody of them.

{¶7}  In April 2016, CCDCFS filed a case plan for Mother and the children.  The case plan stated that to reduce risk and address the safety issues of the children, Mother was supposed to "establish and maintain stable and safe housing" and "provide basic needs."  The case plan also stated that Mother was to "complete a mental health assessment at an appropriate treatment provider and * * * follow all recommendations as a result of the assessment[,]" including

---

[1]The trial court awarded custody of A.H. to his father, and A.H. is not subject to the instant appeal.

[2] The fathers of S.B., C.B., and J.B. did not participate in the lower court proceedings and are not parties to the instant appeal.

[3] The docket of J.B.'s custody case shows that the magistrate committed J.B. to CCDCFS's emergency custody the next day, March 11, 2016.

[4] During the permanent custody hearing, Amy Habinski, the GAL for S.B. and C.B., testified that she was the GAL for the children; a review of the docket of J.B.'s custody case, however, does not show that Habinski was appointed as J.B.'s GAL.    The record shows that the trial court also appointed Attorney Daniel Bartos as counsel for S.B.

fulfilling any treatment and medication recommendations. During that same time, the trial court appointed a GAL for Mother.

**{¶8}** In May 2016, the GAL for S.B. and C.B. filed a report stating that the children "are doing well in their foster placement" and that she believed that "it [was] in the children's best interests to be placed in [t]emporary [c]ustody" of CCDCFS.

**{¶9}** Also in May 2016, CCDCFS amended its complaint, and Mother stipulated to that amended complaint. She admitted that she was unable and unwilling to provide care for the children because of her unemployment and homelessness.

**{¶10}** As a result, in June 2016, the trial court found that the children's "residence in or return to the home of [Mother] will be contrary to [the children's] best interest[s]." It stated, "[r]elevant services were provided to the family, but were not successful because Mother needs to complete a mental health assessment, establish housing and complete parenting education." It found that the children could not be placed with relatives because there were not any relatives willing and able to provide substitute care. As a result, the juvenile court adjudicated the children dependent and committed the children to CCDCFS's temporary custody. The juvenile court also approved CCDCFS's case plan for reunification.

**{¶11}** In April 2017, the magistrate granted CCDCFS's motion for first extension of temporary custody, extending temporary custody until September 8, 2017, which was the projected date "for the safe return of the [children] to the mother's home[.]" The magistrate's order stated that the permanency plan for the children was reunification. The trial court approved the magistrate's decision.

**{¶12}** In August 2017, CCDCFS filed a motion to modify temporary custody to permanent custody. Attached to CCDCFS's motion was an affidavit from CCDCFS worker,

Renae Cameron, who stated that she was assigned to the children's case on March 22, 2016. Cameron's affidavit discussed the case plans for Mother, S.B.'s father, and C.B.'s father. The affidavit stated that "[a]lthough Mother has completed a mental health assessment, Mother has failed to comply with her medications, as prescribed." The affidavit also said,

> Mother has no permanent, stable housing in which to provide care for the children. Mother's prior unresolved criminal matters have impeded Mother's ability to secure housing and engage in services related to housing[.] Mother is unable to meet the children's basic needs [and] has no source of income in order to provide for the children's needs.

{¶13} Cameron's affidavit also noted that the fathers of S.B. and C.B. "failed to make [themselves] available to the Agency and [have] not participated in case plan objectives" and have "failed to visit [their children] in more than ninety days." In a separate affidavit, also attached to CCDCFS's motion, Cameron stated that the Agency was unable to identify or locate J.B.'s father despite making reasonably diligent efforts to do so.

{¶14} In January 2018, Amy Habinski, the GAL for S.B. and C.B., filed a report that described the children's current foster placements. The report also stated that "[m]other has kept more visits than she has cancelled. However there is still an inexplicable failure to find housing, provide basic needs or maintain any reliable stability." According to Habinski,

> [M]other was briefly incarcerated in March 2017 after she turned herself in on outstanding warrants. This, of course, caused a disruption in her visitation with the children. Since that time, the GAL has tried on multiple occasions to attend visits with [Mother] and the boys. Only one successful visit occurred, and it was appropriate. Otherwise, visits have either been cancelled last minute or the locations are changed at the last minute, leading the GAL to knock on the door of any empty apartment.

Habinski concluded that she believed it was in the "children's best interests to be placed in the Permanent Custody of [CCDCFS]" because "Mother has made no lasting, necessary changes or

improvements and the GAL does not believe additional time for compliance is likely to engender it."

**Hearing on Motion for Permanent Custody**

{¶15} The trial court held a hearing on CCDCFS's motion in June 2018, during which counsel for CCDCFS, Mother, counsel for Mother, counsel for S.B., and the children's GAL participated.[5] Cameron, the CCDCFS worker assigned to the family, testified that the current case plan objectives for Mother were "to provide basic housing, shelter, medical care for the children, [and] mental health for herself, [which] includes dealing with a mental health provider following all recommendations." She stated that Mother was also supposed to undergo drug treatment, including submitting urine tests, undergoing a drug and alcohol assessment, and following any other recommendations. Cameron explained that Mother completed an intake with The Centers for Families and Children and that she was connected to "pharm management and CPSD services" and recommended to take medication beginning in October 2016. Cameron explained that Mother has failed to involve herself in "pharm management" since August or September 2017 or in "CPSD" and case management since December 2017. Cameron stated that because Mother expressed transportation and housing issues, she supplied Mother with bus tickets so she could complete her mental health objectives. Cameron stated that despite the assistance, Mother failed to complete the case plan objective related to mental health.

{¶16} Cameron next testified that Mother was also supposed to complete a housing component as part of the case plan, requiring her to "get a house that is suitable and appropriate and safe for her and the children." Cameron stated that, at the time of the hearing, Mother did

not have her own stable housing. Cameron testified that despite providing Mother with a housing voucher through the Cuyahoga Metropolitan Housing Authority ("CMHA"), Mother failed to follow through with documentation and the voucher expired and expired a second time after mother was given an extension. She explained that Mother only contacted a landlord with respect to the voucher near the time of expiration and that the landlord was not able to make the house available before the expiration.

{¶17} Cameron also explained that Mother was not employed and did not have an income or reliable transportation and, therefore, could not provide for the children's basic needs. She stated that Mother failed to complete the case plan objectives related to substance abuse.

{¶18} Discussing Mother's visitation schedule with the children, Cameron explained that Mother has consistently missed one to two visits per month. During the visits, Cameron stated that there is usually "minimum" interaction between Mother and the children and that the children "are usually running around doing their own thing and their mom is * * * just sitting back."

{¶19} Cameron also explained that to improve interaction with the children, Mother was connected to a parenting coach program, but that Mother failed to complete it.

{¶20} Cameron testified that Mother does communicate with S.B. and C.B. over the phone, but that she does not support the children in any way. She also stated that Mother has not attended a semiannual review ("SAR") or staffing meeting since 2016 and has missed four case reviews since that time.

---

[5] At the time of the June 2018 hearing, S.B. was nine, C.B. was seven, and J.B. was three.

**{¶21}** Cameron next discussed the children's current foster placements and well-being. She stated that C.B. was doing well in his current placement and his special needs were being successfully addressed by services provided by the foster parents. Cameron testified that S.B. was also doing well in his current foster placement and was also having success in addressing his special needs through his foster parents. Cameron testified that both C.B.'s and S.B.'s behavior has progressed, with less disruptions at home and in school. As to J.B., Cameron explained that his foster family met "all of his basic needs" and that his special and developmental needs were being addressed by his foster parents.

**{¶22}** Cameron explained that CCDCFS was seeking permanent custody of the children because "the children have been in custody for over two years and there has not been significant progress for the case plan and we do not have any relatives identified and approved for them to go to." She stated that Mother was not able to care for the children because Mother "does not have her own stable housing [and] is not consistent with her own mental health services." She explained that S.B. and C.B. need "their services and they have a lot of appointments that they cannot miss due to their behaviors[.]" She stated that permanent custody to CCDCFS would be in the children's best interests because "they all have their basic needs met, their mental health, their special needs, and services provided consistently."

**{¶23}** On cross-examination, Cameron stated that the children have indicated that they miss their Mother and that the children are bonded to one another. She also stated that there was not a guarantee that if CCDCFS was granted permanent custody that the children would be placed together in the same foster home and whether the children would be adopted by their current foster families. She also agreed that the activity logs only showed that she provided Mother bus passes on two occasions for transportation.

{¶24} Cameron also acknowledged that Mother was the victim of a felonious assault in 2013 when she was shot in the head and pregnant with J.B. Cameron testified that Mother still has a bullet in her head, was diagnosed with depression as a result, and "was linked [to] the Centers for Families and Children Services [to] help[] coordinate the care between her primary doctors and the doctors involved in that and in regards to her mental health."

{¶25} On redirect, Cameron stated that she offered Mother bus passes numerous times but only provided her bus passes on two occasions. She also testified that S.B. expressed that he "does not wish to return to mom. He likes where he's at." She said that C.B. likes seeing his mom and that he likes "his activities and the things that he is involved with at the foster home."

{¶26} CCDCFS rested, and Mother did not present witnesses.

{¶27} Amy Habinski, the children's GAL, spoke next. She testified that she became involved in the case during the emergency custody hearing and that the case has gone on for two years, but that "things just aren't remedied." She stated that while "the boys love their mom," "they've never expressed to me, and particularly, the eldest, that they want to live with her again." She said that "[t]he boys are doing well and happy" and that "permanent custody is in their best interest."

{¶28} After the hearing, CCDCFS, Mother, and counsel for S.B. filed proposed findings of fact and conclusions of law.

{¶29} On July 23, 2018, the trial court issued a journal entry with the following findings of fact relevant to this appeal:

8. The children * * * initially came to attention of CCDCFS due to the mother's inability to meet the children's basic needs.

9. At the time of the initial complaint, mother was homeless, unemployed, and unable to provide for the children's basic needs.

* * *

14. Mother was diagnosed with depression. Mother completed a mental health assessment through the Centers around September 2016. The recommended treatment was case management and medication. Mother has not been compliant with medication. Mother is recommended to consistently go to psychiatry appointments, but she has not gone back for refills or appointments. Mother has not engaged in mental health services at the Centers or any other provider since December of 2017.

15. Mother does not have stable and appropriate housing and has not had stable housing since the time of the children's removal in March of 2016. Mother is transient. CCDCFS assisted mother with a housing voucher. The CMHA voucher was valid from October 30, 2017 to February 27, 2018. The assigned social worker, Renae Cameron, gave mother a list of possible landlords and homes to check out. Ms. Cameron spoke with a landlord on behalf of [Mother]. Mother let the voucher expire more than one time and did not follow through or do anything to secure a home for her and the children.

16. Mother is unemployed and does not have a source of income. Ms. Cameron drove mother to appointments to secure benefits. However, Mother does not receive government benefits at this time.

17. Mother acknowledges using marijuana, cocaine and "molly." Ms. Cameron advised Mother to go to Recovery Resources for a walk-in substance abuse assessment and to go to Advantage Healthcare for random drug screens. Ms. Cameron provided Mother bus passes to travel to the appointments. [Mother] failed to complete a substance abuse assessment and failed to complete any drug screens.

18. Mother has not consistently visited with the children. The visits occurred weekly and had to be moved to monthly due to mother's cancellations. Mother misses approximately one visit per month. Mother was offered a parenting class and a parenting coach, but both were ended because of mother's lack of participation. During visits mother appeared, but there was a lack of quality interaction and engagement between Mother and the children due to Mother being preoccupied with her phone.

19. Mother reported that transportation was a barrier to completing case plan services. Ms. Cameron provided Mother with several bus passes and gave Mother rides on occasion. Mother did not use bus passes to participate in case plan services.

20.     Mother has failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the children's home.

* * *

25.     The Agency investigated relative caretakers for the children[.] * * * No family responded to letters or calls.   Maternal grandmother and maternal aunts reported that they are unable to care for the child.

* * *

27.     The children are doing well and report that they like their placements. School attendance is good and grades are good to fair.   The children are medically up to date.

28.     S.B. reports that he does not wish to be reunited with his mother, but he does not want to be placed with J.B.   S.B. and C.B. had a history of fighting with one another and their behaviors improved when separated.

{¶30} The trial court noted the behavioral and development improvements in the children.   The trial court also found that the fathers of C.B. and S.B. demonstrated a lack of commitment toward their children and have not regularly supported, communicated with, or provided for the children.

{¶31} The trial court then made the following findings:

The [children have] been in temporary custody of a public children services agency * * * for twelve or more months of a consecutive twenty-two month period * * * and no longer [qualify] for temporary custody.

That one or more of the factors in division (E) of section 2151.414 of the Revised Code [establishes that the children] cannot be placed with one of [their parents] within a reasonable period of time or should not be placed with either parent;

The [children do] not meet the requirements for a planned permanent living arrangement [under R.C. 2151.353(A)(5) and] no relative or other interested person has filed or has been identified in a motion for legal custody of the child;

Therefore it is in the best interest of the [children] to be placed in the permanent custody of [CCDCFS];

\* \* \*

[T]he court finds by clear and convincing evidence that a grant of permanent custody is in the best interests of the [children] and the [children] cannot be placed with one of [their] parents within a reasonable time or should not be placed with either parent.

**{¶32}** The trial court further found that Mother "failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home" and "demonstrated a lack of commitment toward the [children] by failing to regularly support, visit, or communicate with the [children] when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the [children]."

**{¶33}** The trial court terminated Mother's parental rights and responsibilities and approved CCDCFS's permanency plan and granted CCDCFS's motion for permanent custody.

**{¶34}** It is from this judgment that Mother now appeals.

## II. Law and Analysis

**{¶35}** In her sole assignment of error, Mother argues that the trial court's decision awarding CCDCFS permanent custody of the children was against the manifest weight of the evidence because it was not supported by clear and convincing evidence.

### A. Standard of Review

**{¶36}** Parents do not permanently lose their "fundamental liberty interest" in caring for and having custody of their children simply because they temporarily lose custody to the state. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1938, 71 L.Ed.2d 599 (1982). In fact, "the termination of parental rights should be an alternative of 'last resort'" as it has been labeled as "the family law equivalent of the death penalty[.]" *In re D.A.*, 113 Ohio St.3d 88,

2007-Ohio-1105, 862 N.E.2d 829, ¶ 12, citing *In re Cunningham*, 59 Ohio St.2d 100, 391 N.E.2d

1034 (1979); *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14.

{¶37} A parent's interest in the custody of their child, however, is not absolute, and the

state may permanently terminate parental rights when it would serve a child's best interests. *Id.*

"By terminating parental rights, the goal is to create a 'more stable life' for dependent children

and to 'facilitate adoption to foster permanency for children.'" *In re L.W.*, 8th Dist. Cuyahoga

No. 104881, 2017-Ohio-657, ¶ 21, quoting *In re N.B.*, 8th Dist. Cuyahoga No. 101390,

2015-Ohio-314.

{¶38} When deciding whether to terminate parental rights and award permanent custody

to a public services agency, R.C. 2151.414 requires a court to employ a two-part test. First, the

court must find, by clear and convincing evidence, that the child

(a)     cannot be placed with either parent within a reasonable period of time or should not be placed with either parent if any one of the factors in R.C. 2151.414(e) are present;

(b)     is abandoned;

(c)     is orphaned and no relatives are able to take permanent custody of the child; or

(d)     has been in the temporary custody of one or more public or private children services agencies for 12 months or more of a consecutive 22-month period.

(e)     The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

R.C. 2151.414(B)(1)(a)-(e). Second, a court must find, again by clear and convincing evidence,

that granting permanent custody under R.C. 2151.414(D) is in the child's best interest.

**{¶39}** "Clear and convincing evidence" is a higher standard of proof than a mere "preponderance of the evidence," but a lower standard than "beyond a reasonable doubt." *Id.* at ¶ 48, citing *In re Awkal*, 95 Ohio App.3d 309, 642 N.E.2d 424 (8th Dist.1994). It is satisfied when the evidence presented "produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Id.*, quoting *Awkal*.

**{¶40}** An appellate court will not reverse a juvenile court's decision awarding permanent custody to an agency if the judgment is supported by clear and convincing evidence. *In re J.M.-R.,* 8th Dist. Cuyahoga No. 98902, 2013-Ohio-1560, ¶ 28. A reviewing court is required to examine the record to determine whether the trier of fact had sufficient evidence to satisfy the clear and convincing standard. *In re T.S.*, 8th Dist. Cuyahoga No. 92816, 2009-Ohio-5496, ¶ 24.

**{¶41}** In her assignment of error, Mother specifically argues that evidence does not support the trial court's findings that (1) the children could not be placed with her within a reasonable period of time, and (2) granting CCDCFS permanent custody of the children was in the children's best interests.

**B. Placement of the Children**

**{¶42}** We first look to whether clear and convincing evidence supports the juvenile court's finding that the children could not be placed with their parents within a reasonable time or should not be placed with their parents.

**{¶43}** R.C. 2151.414(E) sets forth 16 factors used to determine whether children cannot or should not be placed with their parents. Some of those factors include whether the parent:

(1)      * * * has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home[;]

(2)     [has] [c]hronic mental illness[;] * * *

(4)     has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so[;] * * *

(16)    [a]ny other factor the court considers relevant.

R.C. 2151.414(E).   If a trial court finds by clear and convincing evidence that any one of the 16 factors exists, it must find that the children cannot or should not be placed with a parent within a reasonable period of time and award permanent custody to an authorized agency.   *In re D.J.*, 8th Dist. Cuyahoga No. 88646, 2007-Ohio-1974, ¶ 64.

{¶44} In its journal entry awarding permanent custody to CCDCFS, the juvenile court found that "Mother has failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the children's home."   There is clear and convincing evidence to support the trial court's finding.   The record shows that CCDCFS removed the children from Mother's custody because she was homeless, unemployed, and unable to provide for the children's basic needs.   During the permanent custody hearing, Cameron, the CCDCFS worker assigned to Mother's case, explained that at the time of the hearing, which took place over two years after the children's removal, Mother was still not employed and did not have an income and, therefore, could not provide for the children's basic needs.   She also testified that Mother failed to complete her case plan objectives regarding substance abuse, failed to obtain housing despite CCDCFS's efforts to obtain a voucher for her, and Mother's lack of transportation.   Cameron also explained that S.B. and C.B. need "their services and they have a lot of appointments that they cannot miss due to their behaviors" and that Mother's lack of transportation and unwillingness to address her own mental health concerns would put the children's basic needs in jeopardy.   Habinski, the children's GAL, also testified that Mother

would not be able to provide for the children's basic needs because Mother failed to remedy the issues over the two-year period.

{¶45} Mother argues that the record does not clearly and convincingly support the trial court's finding regarding the children's placement because (1) she "had made substantial progress" toward her case plan's mental health objectives in April 2017 and complied with those objectives until December 2017, (2) she suffered a serious injury while she was pregnant with J.B. and CCDCFS did not demonstrate "an elevated level of care and guidance," (3) CCDCFS did not provide Mother with a housing voucher until two months after it filed for permanent custody, and (4) she regularly visited with the children, thereby satisfying her visitation objectives under the case plan.

{¶46} First, as to Mother's serious injury and mental health objectives, Cameron explained that Mother completed an intake with The Centers for Families and Children and that she was connected to "pharm management and CPSD services" and was recommended to take medication beginning in October 2016. Cameron explained that Mother failed to involve herself in "pharm management" since August or September 2017 or in "CPSD" and case management since December 2017. Cameron also stated that she provided Mother with bus passes on two occasions so that Mother could complete her mental health objectives, but that Mother failed to use the bus passes for their intended purposes. While Mother's injury was certainly serious and she attended some appointments for her mental health, she failed to avail herself of the mental health services that CCDCFS referred to address her injury and failed to complete the objectives. Further, the record does not show how CCDCFS could have "elevated" its level of guidance without Mother's willingness to participate or complete programs.

**{¶47}** Second, Mother argues that CCDCFS did not help her complete her housing objective until October 2017, two months after it filed for permanent custody. Cameron testified that she "reached out to some * * * providers" to assist Mother with her housing objectives. She explained that CCDCFS has "a program through the CMHA where [CCDCFS] partners with them and they give families, when they have them available, housing vouchers." She stated that after making a referral, Mother received a voucher in October 2017. Cameron also testified that she reached out to a number of landlords on behalf of Mother.

**{¶48}** While Mother did not receive a voucher until two months after CCDCFS filed its motion for permanent custody, Mother failed to present any evidence that she worked toward obtaining, let alone actually securing, suitable housing for her and the children since the removal of the children in March 2016. Therefore, it is clear that CCDCFS made a number of efforts to assist Mother in completing her housing objectives. It is also clear that Mother failed to actively and timely take advantage of CCDCFS's efforts. Therefore, the record supports the trial court's findings that Mother failed to remedy her housing issues.

**{¶49}** Finally, the record does not support Mother's argument that she regularly visited with the children and that she complied with her visiting objectives under the case plan. Cameron explained that Mother had consistently missed one to two visits per month. During the visits, Cameron stated that there was usually "minimum" interaction between Mother and the children and that the children "[were] usually running around doing their own thing and their mom is kind of just sitting back." Cameron also explained that to improve interaction with the children, Mother was connected to a parenting coach program, but that Mother failed to complete it. Cameron stated that while Mother does communicate with S.B. and C.B. over the phone, she does not support the children in any way, has not attended a SAR or staffing meeting since 2016,

and has missed four case reviews since that time. Therefore, the record supports the trial court's findings that Mother failed to remedy the issues that caused CCDCFS to remove the children and failed to complete her case plan's objectives.

{¶50} In light of the above discussion, we cannot say that the trial court's findings were not supported by clear and convincing evidence. Therefore, we find that the first part of R.C. 2151.414's test was satisfied.

### C. The Children's Best Interests

{¶51} To determine whether a grant of permanent custody is in a child's best interest, the trial court must consider:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public service children agencies or private child placing agencies for [12] or more months of a consecutive [22]-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in [R.C. 2151.414](E)(7) to (11)] * * * apply in relation to the parents and child.

R.C. 2151.414(D)(1). The trial court only needs to find one of the above factors in favor of permanent custody to terminate parental rights. *In re J.S.*, 8th Dist. Cuyahoga Nos. 101991 and 101992, 2015-Ohio-2701, ¶ 51, citing *In re Z.T.*, 8th Dist. Cuyahoga No. 88009, 2007-Ohio-827.

**{¶52}** In the instant case, testimony presented at the June 2018 hearing established that, besides a few phone calls, the children had "minimum interaction" with Mother both outside of and during visits at the agency. Testimony also established that while the children loved their Mother, they wished to remain in their foster placements and that the children were in CCDCFS's temporary custody for more than 12 months of a consecutive 22-month period. Additionally, testimony established that the children needed a legally secure permanent placement that could not be achieved without granting CCDCFS permanent custody.

**{¶53}** Finally, the trial court found that "[t]he [children have] been in temporary custody of a public children services agency * * * for twelve or more months of a consecutive twenty-two month period * * * and no longer [qualify] for temporary custody." The record clearly and convincingly supports the trial court's finding and shows that the children were removed in March 2016 and remained in CCDCFS's custody until the permanent custody hearing in June 2018, a 27-month period. Therefore, we find that the second part of R.C. 2151.414's test was satisfied.

**{¶54}** Accordingly, we overrule Mother's assignment of error.

**{¶55}** Judgment affirmed and permanent custody awarded to CCDCFS.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

MARY J. BOYLE, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
RAYMOND C. HEADEN, J., CONCUR